SOUTHERN RY. CO. v. MYERS. SAME v. WHYTE. SAME v. REED.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1898.)

No. 631.

1. RAILWAY—PASSENGERS—INJURY—BURDEN OF PROOF.
   Where passengers on a railway train are injured without fault of their own, the presumption is, under the statutes of Georgia, that the railway company is liable, and the burden is upon it to rebut such presumption.

2. SAME—DAMAGES—ANTICIPATED PROFITS.
   Where the members of a theatrical troupe take passage by a railway train to a place at which they expect to play, the mere fact that the agent of the railway company knows of such intention will not raise the presumption that he has in contemplation, as an element of the damage to result from a possible failure to arrive in time, the amount of profits which they expect

to realize. Damages for the loss of such profits are therefore too remote to be allowed, and it is error to admit evidence regarding them.

3. SAME—ELEMENTS OF DAMAGE.

Where the leader of a theatrical troupe is injured by the wreck of a train upon which the troupe is traveling, the elements of his damages are injury to his person, medical expenses, maintenance of himself and troupe while disabled by the accident, wages paid to members of the troupe during the same time, and the reasonable value of his own time lost.

In Error to the Circuit Court of the United States for the Southern District of Georgia.

J. F. De Lacy, J. Bishop, Jr., and W. A. Henderson, for plaintiff in error. .

John T. Glenn, John M. Slaton, and Benj. Z. Phillips, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge.    On March 8, 1895, Mrs. Mary Myers, Mrs. John G. Whyte, and Roland Reed were passengers on the railroad of the Southern Railway Company, going from Macon, Ga., to Jacksonville, Fla.    They left Macon at 2 o'clock in the morning, and at Scotland, a station on the line, the train was derailed, and the sleeper in which the parties above named rode was overturned, and each of the parties was more or less injured.    In September following, each of the persons named as having been thus injured began an action against the Southern Railway Company in the superior court of Telfair county, Ga.    In each of these actions the defendant railway company presented its petition for removal of the case to the United States circuit court for the Southern district of Georgia.    The order of removal was granted in each case, and the transcript in each duly filed in the circuit court.    On May 17, 1897, the court entered an order which, after reciting the style of each of the three cases, proceeded thus:

"It appearing to the court that the above-stated cases are suits for damages against the same defendant, arising out of the same wreck, and involving to a large extent the same evidence, it is ordered that said cases be consolidated and tried together, the verdicts in each case to be rendered separately."

The cases thus consolidated proceeded to trial, and were tried together as a single case; and on May 25, 1897, the jury rendered its verdict in each case, finding in favor of Mrs. Mary Myers for $4,000, and in favor of Mrs. John G. Whyte for $1,000, and in favor of Roland Reed for $2,000, on which verdicts, respectively, judgments were entered, to review which the defendant sued out a writ of error.

The assignment of errors covers 16 pages of the printed record. There is but one bill of exceptions.    It covers 337 pages of the printed record.    In justice to the distinguished counsel who tendered the bill, it is meet to remark that 317 of these printed pages are occupied by what is denominated "Exhibit A to Bill of Exceptions" and "Exhibit B to Bill of Exceptions," which exhibits appear to have been added to the bill of exceptions as originally tendered at

the instance, if not on the requirement, of the able and learned judge of the circuit court before whom the case was tried. At one place the judge certifies that:

"The foregoing brief of evidence, consisting of stenographic transcript of the oral testimony on the trial, and of the depositions taken in said case, is certified and approved as a part of the bill of exceptions. And it is further certified that the whole of said testimony is material to a clear understanding of the exceptions taken upon the trial of said cause."

And in another place he says:

"The foregoing bill of exceptions is certified and allowed, and it is ordered that, for the better understanding of the case, the entire charge of the court be hereto attached as Exhibit B, and made a part of the bill of exceptions."

Exhibit A purports to be, and doubtless is, all of the oral and documentary evidence offered on the trial. It embraces the original interrogatories and cross interrogatories propounded to witnesses whose testimony was taken as on commission. It also embraces the stenographer's report of questions propounded to witnesses on the stand, and their answers thereto, both in their direct, cross, and redirect examination. A part of this book of evidence of 290 closely-printed pages as mere literature is good reading. Much of it, however, is monotonous. Whether it is the one or the other, it is not our office, nor have we time, to luxuriate or labor on it. The facts in the case are few, and by no means novel. The substance of the testimony offered or what it tends to prove could have been stated on a very few pages, and would have shown to us as fully, and much more clearly, its bearing on the different rulings on the admission of evidence and the giving and refusing of charges to the jury. The manner in which the bill reserves exceptions to the refused requests and to the corresponding portions of the general charge does call for a different statement of the testimony from any that is made in the bill of exceptions as originally tendered, and it was proper for the judge of the circuit court to require the bill to be reconstructed, and give an adequate statement of what the proof tended to show applicable to these requests and these exceptions to the general charge. Moreover, these exceptions to refusal of requests, and to the portions of the charges given, are so numerous and comprehensive that, to secure a proper understanding of them by the court of appeals, it was necessary that that court should have before it the whole of the general charge.

After as careful and as extended an examination of the record as the state thereof calls on us to make, we find no error on account of which the judgment in favor of Mrs. Mary Myers and the judgment in favor of Mrs. John G. Whyte should be reversed. It is not questioned that they were passengers for whose carriage stipulated fares had been paid. They were injured without their fault by the operation of the road. The presumption of law, especially in Georgia, where they have a special statute to that effect, is that the railroad company was liable, and the burden of proof was put upon the carrier to show that it was not liable. Much testimony bearing on this issue was given to the jury. In reference to it the jury were well instructed. And on the evidence, under sound in-

structions, they found their verdict for these plaintiffs, on which the judgments in their favor were rendered by the circuit court. These judgments must be affirmed.

The judgment in favor of Roland Reed should be reversed. The 18th, 19th, 20th, 21st, and 22d specifications in the assignment of errors point out that the court erred in admitting the testimony of E. B. Jack, Charles W. Keogh, G. V. Burbridge, Roland Reed, and Sanford Cohen in reference to the anticipated profits of the Roland Reed troupe from its engagements at Jacksonville, Savannah, Charleston, and Augusta on the days immediately following the day of the injury, the admission of which testimony was objected to by the defendant on the ground that the profits testified about were speculative, and depended upon numerous uncertain and changing contingencies; that such profits were remote, and their loss not the direct and immediate result of the nonfulfillment of the contract; that there was no guaranty or express contract on the part of the defendant to transport the plaintiffs to Jacksonville, or that they would reach the other cities upon the date of their engagement; and that such profits were not in the contemplation of the parties; and that the engagement to pay the loss of such profits was not a part of the contract itself, nor to be implied from its nature and terms.

The 23d, 24th, and 26th specifications are as follows:

"(23) Because the court erred in refusing to charge the jury as requested by the defendant, as follows: 'In this case the only evidence before you as to the knowledge of the defendant in respect to the performance to be given by the Roland Reed Company is that the advance agent informed the defendant's agents of the fact that the company was to play at Jacksonville, and successively at Savannah, Charleston, and Augusta. It is not claimed or contended that the defendant was put on notice of the profits which the plaintiff's company expected to realize at these several points, and, in the absence of such proof, the court charges you that the plaintiff is not entitled to recover the same.'

"(24) Because the court erred in refusing to charge the jury as requested by the defendant as follows: 'In considering the claim for the recovery of such profits, the court instructs you that profits are not recoverable where—First, they are dependent upon numerous, uncertain, and changing contingencies, and thus fail to constitute a definite, trustworthy measure of actual damages; second, where such loss of profits is remote and not the direct and immediate result of the nonfulfillment of the contract; and, third, where the engagement to pay such loss of profits in case of default in the performance is not a part of the contract itself, nor to be implied from its nature and terms.'"

"(26) Because the court erred in charging the jury as follows: 'With regard to Mr. Reed, if you believe from the evidence that his agent made a contract with the defendant company by which he was to be transported to Jacksonville for the purpose of performing there, and that the company was also apprised that it was his purpose to play the successive nights and days at Savannah, Charleston, and Augusta, and if the company failed to transport him to Jacksonville in such manner as would enable him to perform there, he would be entitled to recover a sum equal to the loss which he sustained because of such failure, if the proof is sufficient to satisfy you what that loss was. And on this subject I charge you that the plaintiff is not held to absolute exactitude of proof in order to justify a recovery in such case because the very failure of the company, if at fault, would make exact proof impossible; but, if the evidence is sufficiently and reasonably certain to enable you to fairly approximate what Mr. Reed's profits would have been at Jacksonville, he will be, in case you find for him, entitled to recover that sum.'"

A very careful examination of all the proof touching the matters embraced in these assignments satisfies us that there was no evidence tending to prove that Mr. Reed's advance agent made any contract with the agent of the defendant which expressed or implied such a guaranty of the arrival of the train at Jacksonville at such time and in such condition as would enable the troupe to perform at Jacksonville at its appointed time. The proof appears to us to tend only to show that the advance agent of the plaintiff Reed contracted with the agent of the defendant for a reduced troupe rate, or perhaps a customary troupe rate, at prices below the rate for individual passengers. In this negotiation it naturally transpired that not only information as to the number of the troupe was given the agent of the defendant, but also notice and information as to their object in going to Jacksonville, and the time at which they were to play there. The running schedules of the different trains were considered, and the train most convenient for the troupe to take, which on its schedule time would make timely arrival in Jacksonville, was selected. The proof does not only not tend to show such a contract for carriage as naturally brought into the contemplation of the parties liability on the part of the carrier for damages for loss of profits the passenger might reasonably expect to make at Jacksonville, but it seems to us to affirmatively negative, not only the existence of such an express contract, but the making of any contract from which such an implied liability might spring. The advance agent, E. B. Jack, as a witness, testified as follows:

. "Q. Was there any demand on your part or agreement on theirs for a guaranty as to what the schedule would be,—that they would arrive there at a certain time? A. No railroad company ever agrees to that. Q. Nothing of that sort asked or demanded? A. They agreed to get us into Jacksonville in time to play next day. Q. Did they bind themselves to do that, or did they merely show you the schedule? A. They accepted the proposition; that is, I stated we would leave at a certain hour, and was to play in Jacksonville. Q. And play in Jacksonville? A. Yes, sir; and they accepted the proposition. Q. They showed you a schedule? A. No; they told me that we would leave here at a certain hour, and arrive in Jacksonville at a certain hour. Q. Did they guaranty that would be done? A. They accepted the business."

In the absence of a definite contract for carriage to a given point by a given time, with such reasons for its making as would naturally lead the agent of the carrier to contemplate the profits the passenger expected to realize, it is clear that the damage claimed for the failure to realize such profits is too uncertain and remote, and that, until competent proof tending to show such contract was offered and admitted, it was error to admit any testimony in reference to the speculative profits which the passenger might have made if he had been safely carried through on schedule time. Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500, and cases therein cited. On the case as it was made at the trial, on the competent proof admitted, Reed's recovery should have been limited to compensation for the injuries inflicted on his person, including therein the usual elements, and such actual reasonable expenses as the proof showed he was liable to pay for maintenance, medical treatment, and proper care of himself and the different

members of his troupe during the time he and they were disabled by the accident, including such wages, if any, which he was bound to pay to the other members of his troupe, and including also the reasonable value of his own time during the period that he was kept from work in his profession. It is ordered that the judgment in favor of Mrs. Mary Myers and the judgment in favor of Mrs. John G. Whyte be, and each is hereby, affirmed; that the judgment in favor of Roland Reed be reversed; and the cause as to him is remanded to the circuit court, with instructions to award the defendant therein a new trial.