## 5538.  SOUTHWESTERN RAILROAD CO. *v.* VELLINES.

1. If a cause of action against a railroad company arises in a county where the company has no agent, suit may be brought in the county of the residence of the company (Civil Code, § 2798); hence where one is injured on a railroad by a train which, by permission of a corporation owning the railroad, is operated over its tracks, and the owner has no office in the county where the injury is inflicted, it may be sued in the county of its legal residence.
2. Consequential damages which are the necessary and connected effect of a tortious act may be recovered for loss of time, and the usual average earnings of the plaintiff may be shown as a basis for recovery, if the proof is reasonably certain.
3. The evidence is sufficient to support the verdict, and no error was committed by the trial judge.

                    DECIDED JUNE 21, 1914.

Action for damages; from city court of Macon—Judge Hodges. February 20, 1914.

*Jordan & Lane,* for plaintiff in error.  *Hall & Roberts,* contra.

WADE, J.  W. L. Vellines brought suit against the Southwestern Railroad Company, a corporation of the State of Georgia, having its principal office, place of business, and residence in the county of

Bibb, in said State.   Plaintiff alleged that on June 13, 1912, while he was a passenger on a train then running on the line of the Southwestern Railroad Company, between the city of Columbus and the city of Macon, in said county of Bibb, and while at a point on said line in the county of Crawford, the engine pulling the train on which he was a passenger collided with certain freight-cars then standing on the main line of said railroad, which cars had been pushed out on the main line by employees in charge of another engine and a train of cars then being operated on the line of said railroad company; that when the collision occurred, the shock to the train on which he was riding threw him about in the car with great force and violence, and inflicted upon him great bodily injuries; that he was struck violently on his head in several places; that his nose was broken; that he received severe injuries in the lower part of his spine; that his back and both hips were wounded and bruised severely; that he received severe injuries in his right side—from all of which injuries he became unconscious, and remained in a totally unconscious condition for a period of twelve hours or more; that he was asleep at the time the collision occurred, and did not recover consciousness until the next day, June 14, 1912, when he awoke in a hospital in the city of Macon, where he had been brought from the scene of the injury on the said Southwestern Railroad; that he was confined to the said hospital and suffered from the injuries received in the said collision for several days, and was then placed on a train and conveyed to his home in the city of Norfolk, Virginia, where he was compelled to remain in bed for the space of three weeks, and that for sometime thereafter he was obliged to use crutches when he left his house; that because of the injuries received he was totally incapacitated for work and business for the space of three months, and was unable to resume his former occupation until January 1, 1913, and even since that time was unable, on account of the resulting pain and suffering, to pursue such business regularly or steadily, as he did before the injuries were inflicted, though attempting so to do; that at the time these injuries were inflicted he was employed as traveling salesman for various manufacturers and jobbing houses, dealing in furniture and kindred goods, and that during the time he was confined and entirely unable to work on account of his said injuries, his losses from his business amounted to at least $12,000;

and that since he resumed his said business he lost $500 per month, on account of his inability to work as before; that the injuries inflicted upon him at the time of the collision caused him intense mental and physical pain and suffering, and would continue to trouble him so long as he lived, as the injuries were permanent in their character, and that he had contracted physicians' bills and medicine bills for at least $1,000, as a result of the injuries; that at the time he received the injuries he was a strong, healthy, active man, capable of earning $20,000 per year, and his earning capacity was decreased thereby at least one fourth, and by reason thereof he lost the employment that he had at the time he suffered the injuries, which was of the value of $5,000 per year to him; that he was forty years of age at the time of receiving the injuries, and had "a reasonable expectancy of——years;" that the train on which he was traveling when he was injured was a train of the Central of Georgia Railway Company, which train was being operated by that company on the line of railroad of the said Southwestern Railroad Company; that the Central of Georgia Railway Company at that time was using and operating its passenger-train on the railroad of the said Southwestern Railroad Company with the knowledge and consent of the said Southwestern Railroad Company; that he was injured and damaged, by reason of the facts alleged, in the sum of $25,000, and that the Southwestern Railroad Company, over whose line he was traveling as a passenger from Columbus to Macon, on June 13, 1912, had not then, nor did it have when the suit was filed, an agent residing in any of the counties through which its railroad then ran between Columbus and Macon, except in the county of Bibb; that at the time he received the injuries sued for he was in the exercise of all ordinary care and diligence, and could not have prevented the consequences to him, arising from the negligence of the Southwestern Railroad Company, but the injuries were caused entirely by the negligence of the said Southwestern Railroad Company, in permitting the said cars to be upon the main line, at a time and place where the engine attached to the train on which he was then a passenger would come in collision therewith. By an amendment to the petition the plaintiff alleged that at the time he received his injuries as set forth in the petition, and at the time of the filing of the petition, the Southwestern Railroad Company had no agent in the county of

Crawford, and that the line of the Southwestern Railroad Company between Macon and Columbus runs into and through the county of Crawford, and that the freight-cars with which the said passenger-train collided were at the time of the collision standing on the main line of the Southwestern Railroad Company and on the track on which the passenger-train on which the plaintiff was riding was then being operated.

There was no proper service of petition and process, and at the appearance term an order to perfect service was taken, and in due time, before the next term of the court, the petition and process were served upon the Southwestern Railroad Company, by handing a copy thereof to its secretary and treasurer at Macon, where the principal office, home, and residence of that company was. The defendant filed a motion to dismiss the suit because there was no sufficient service under the provisions of section 2801 of the Civil Code, and also on the ground that the city court of Macon had no jurisdiction to try the case under the service actually had. The defendant likewise demurred to the petition of the plaintiff for want of jurisdiction in the city court of Macon to try the case; because the petition showed upon its face that the alleged cause of action accrued out of the jurisdiction of that court, to wit, in the county of Crawford, and not in the county of Bibb; and because the petition failed to show that the Central of Georgia Railway Company, "which, it is alleged in said petition, operates trains over the Southwestern Railroad Company," has no agent in Crawford county upon whom service could be perfected under section 2801 of the Civil Code. The court overruled both the motion to dismiss and the demurrer, and exceptions pendente lite were allowed and filed. The defendant filed an answer admitting that the Southwestern Railroad Company was a corporation of this State, with its principal office, place of business and residence in the county of Bibb, and that the said company had, as alleged by the plaintiff, a line of railroad from Columbus to Macon, which runs into and through the county of Crawford, and had no agent in the county of Crawford at the time of the alleged collision or at the time of the filing of the original petition in the case. It was later admitted in open court that the defendant had "no office or agent in Crawford county, and that its principal office was in Macon, Bibb county." All the remaining allegations in the plaintiff's petition

the defendant either denied or alleged that it was unable to admit or deny for lack of sufficient information, except the allegation that the train on which the plaintiff was traveling at the time the injury occurred was a train of the Central of Georgia Railway Company, then being operated by that company on the line of railroad of the Southwestern Railroad Company, and that the Central of Georgia Railway Company was at the time using and operating its said passenger-train on the railroad of the Southwestern Railroad Company with the knowledge and consent of the Southwestern Railroad Company; but it denied so much of this allegation as "charges or infers that the plaintiff [?] was vouched as aforesaid, which defendant denies."

There was evidence from the plaintiff and other witnesses tending to sustain all the material allegations in the petition, except those allegations relative to the expense incurred for medicine and services of physicians. On the question as to the value of his lost time, the plaintiff testified that he was confined to his house about three months, entirely unable to leave it for more than three weeks, and that he went on crutches until about the middle of October for about two or three weeks, but had to stop work towards the latter part of each week, on account of the pain his back and leg gave him; that he could not carry his samples, but had to employ a man to do so for him, and, after trying for three weeks, quit and went home on account of his sufferings; that he made another effort and stayed on this trip about the same time and quit again on account of pain in his back and consequent lack of energy; that, in the business he was engaged in at the time of the injury he had been earning by the week "from three to five hundred dollars," and that he was totally unable to perform any labor for twelve weeks; that the best months in the year for the furniture business, for metal beds and go-carts, were from June until the latter part of September or the middle of October; this is the period during which salesmen of these goods get orders; that he earned from this business in round numbers $5,600 in 1911, but he was unable to say what he earned in 1912, until he got a statement. That the $5,600 he earned in 1911 was earned "in the same period of time" that he was incapacitated in 1912; that he started out for the fall season of 1912, in June, and found 1912 a better year than 1911, up to the time of his injury; and on the day before the injury did

more than $1,200 worth of business in Columbus, Georgia, and from this business received $72 for his part; that he traveled the States of Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi and Tennessee, and part of West Virginia, during 1911 and 1912, selling brass beds, bed-springs, mattresses, doll and baby buggies, and jumping-machines, and had been engaged in this business about eight years; and that with the help of an assistant he made between $1,600 and $1,700 after he went back to work on the first of January, 1913. He testified that he was forty-one years of age at the time of the injury. Life-expectancy tables were put in evidence. The defendant admitted that it had no office or agent in Crawford county, and that its principal office was in Macon, Bibb county. There was proof that the wreck occurred in Crawford county. The defendant introduced witnesses in an effort to show that the plaintiff was not injured so seriously as claimed by him. The case went to the jury, and they returned a verdict in behalf of the plaintiff for $6,000 principal and costs. The defendant made a motion for a new trial on the general grounds, and also on several special grounds. The case came to this court on a bill of exceptions complaining of the overruling of the motion for a new trial, and of the overruling of the motion to dismiss and the general demurrer to the original petition.

1. Taking up the several points involved in this case in the order indicated by the headnotes, we first pass upon the point raised by the motion to dismiss and the demurrer, which was to the effect that the city court of Macon was without jurisdiction to try the case, since the petition showed that the cause of action, if any accrued to the plaintiff, accrued in the county of Crawford, and not in the county of Bibb; and because the petition failed to show that the Central of Georgia Railway Company, which, the petition alleged, operated trains over the Southwestern Railroad, had no agent in Crawford county upon whom service could be perfected. The question raised by this demurrer and the motion to dismiss is whether or not section 2801 of the Civil Code of 1910, which provides for service of process on a railroad company which has leased its line of road to any person or corporation, fixes and determines the only method by which service can be perfected on such a company, when a lessee has possession of the road. Section 2798 provides that all railroad companies shall be sued in the

county in which the cause of action originated, by any one whose person or property has been injured by the said railroad company, its officers, agents, or employees, for the purpose of recovering damages for such injuries; and provides further that "If the cause of action arises in a county where the railroad company liable to suit has no agent, then suit may be brought in the county of the residence of such company."

It is argued for the plaintiff in error that the suit brought by Vellines should have been served on the lessee of the Southwestern Railroad Company,—the Central of Georgia Railway Company,— and notice given the lessor, but there is not in the record any evidence whatever that sets up the contention or establishes as a fact that the Central of Georgia Railway Company is the lessee of or is operating the Southwestern Railroad, or is even *regularly* operating trains along the lines of the Southwestern Railroad Company between Columbus and Macon, Georgia, nor does it appear, from any allegation in the petition, that the Southwestern Railroad Company leased its lines to the Central of Georgia Railway Company or to any one else, but the petition alleges that the plaintiff, at the time he was injured, was traveling on a passenger-train of the Central of Georgia Railway Company, which was being *operated* by the Central of Georgia Railway Company on the line of railroad of the Southwestern Railroad Company, and the Central of Georgia Railway Company was using and operating its passenger-train at that time on the railroad of the Southwestern Railroad Company with the knowledge and consent of the latter. See *Central Railroad Co.* v. *Phinazee,* 93 *Ga.* 488 (21 S. E. 66) ; *Macon & Augusta Railroad Co.* v. *Mayes,* 49 *Ga.* 355 (15 Am. R. 678) ; *Chattanooga, Rome & Columbus Railroad Co.* v. *Liddell,* 85 *Ga.* 482 (11 S. E. 853, 21 Am. St. R. 169), and numerous other cases. The petition alleges further that the plaintiff's injuries were caused by the negligence of the Southwestern Railroad Company in permitting freight-cars to be upon the main line at the time and place when the train on which petitioner was a passenger came in collision therewith. In other words, it appeared that there was a distinct avoidance of any allegation that the one road was leased by the other, but the entire suit is based on the idea that the Southwestern Railroad Company permitted the Central of Georgia Railway Company to operate this particular train over

its line of railroad, and allowed certain freight-cars, some of which appeared from the evidence to have been coal cars, to be and remain upon the main track of the Southwestern Railroad Company in the direct path of the moving passenger-train—the proximate cause of the injury being the negligence of the Southwestern Railroad Company in allowing or permitting the said freight-cars to be left on the main line by the "employees in charge of another engine and train of cars then being operated on the line of the said Southwestern Railroad Company." The petition does not even disclose who was operating the engine and train of cars which pushed the freight-cars on the main line in the way of the oncoming passenger-train. It does not appear that any necessity existed for the plaintiff to allege that one road was the lessor and the other the lessee (if indeed this be the fact), unless the plaintiff desired to bring his cause in a different way, and bind both the lessor and the lessee.

In the case of *Central Railroad Co.* v. *Gamble, 77 Ga.* 584 (3 S. E. 287), the petition alleged in one count that the Central Railroad Company was the lessee of the Southwestern Railroad, and in another it was alleged that the Central Railroad Company was in possession of the Southwestern Railroad and controlled and operated it. The evidence tended to show that the Southwestern Railroad was controlled by the Central Railroad Company, and it was held that "Where one count of a declaration alleged that the railroad where the injury occurred was operated under a lease by the railroad against which suit was brought, and the other count alleged that the defendant was using, controlling and running the other road, without specifying the form of contract or the agreement under which it was so running and controlling it, evidence of the fact that the defendant was using and controlling the other road sustained the latter count, and was sufficient, without further proof as to that point, to maintain the action." Applying the principle ruled in that case, it appears to us, where the object is to bind when the defendant company allowed another to operate and control it, that the reverse of the above would apply equally well, and it would not be necessary in such a contingency to set out and declare under what terms, how, or why, in this case, the Southwestern Railroad Company permitted the Central of Georgia Railway Company to operate a train or trains on its tracks. Since it does not appear that any allegation is made touching the leasing

of one of the roads by the other, it is not incumbent upon us to definitely decide and declare what should be the mode of service in such a case, but it seems to us that section 2798 of the Civil Code provides the method whereby railroad companies may be served, and that only in the event it is desired to bind both the leasing and the lessee railroads is it necessary to follow out the method prescribed by section 2801. In other words, it appears to us that section 2801 is merely cumulative, and provides another and different method of service from that provided for in section 2798, to be resorted to where for any reason it is desired to bind both the lessor and the lessee. We are confirmed in this opinion by the language of section 2802, which is as follows: "Provided, that the plaintiff shall not be compelled to bring suit against any such lessee and give the notice as herein provided, but may do so at his option; but when such notice is given to the lessee, the judgment rendered in said suit shall be binding upon the lessee as though service had been made as now provided by law for service upon railroad companies." From this it does not appear that the legislature, at the time this act in reference to service on leasing railroad companies (Acts 1889, p. 137) was passed, intended to interfere with the law then existing and on the statute books relative to service on corporations; and when the act of 1898 (Civil Code, § 2798) was also passed, it merely put a limitation on the law existing before that embodied in section 2801 came into existence, or took the place of such law, so far as it related to suits against railroad companies for damages to person or property.

2. In the motion for a new trial it is complained that the court erred in allowing the plaintiff "to testify, over the objection of the defendant's counsel, as follows: Q. Now Mr. Vellines, at the time you received these injuries what were you making a week? A. From three to five hundred dollars a week." In another ground of the motion it is complained that the court erred in allowing the plaintiff "to testify, over objection of the defendant's counsel, as follows: Q. In the business you are engaged in, what had you been earning by the week? A. From three to five hundred dollars a week. Q. How long was that a total loss to you? A. Twelve weeks." In another ground it is complained that the court allowed the plaintiff "to testify, over objection of the defendant's counsel, as follows: Q. On the day before, in Columbus, what amount of

business had you done?   A. I did over $1,200.   Q. What amount have you received from the business you did that day?   A. About $72."   These three grounds of the motion for a new trial may be treated together, since the same point is involved in all.   The defendant insists that the evidence was not admissible, because it related to earnings of commissions, and because such commissions were too uncertain and speculative to form a basis of recovery in the suit, as the plaintiff alleged in his petition that all his earnings were from commissions made on sales.   We do not think the court committed any error in allowing this testimony.   A very definite difference is generally recognized between consequential damages which may be recovered for the breach of a contract and similar damages recoverable for a tort.   The damages which may be recovered for a breach of contract are usually limited to the direct and immediate consequences of the breach,—such damages as arise naturally and according to the usual course of things therefrom, and such as the parties must have reasonably contemplated when the contract was made, as the probable result of its breach.   Consequential damages are not allowed when they can not be traced solely to the breach of the contract, or unless they are capable of computation, and are independent of any collateral enterprise entered into in contemplation of the contract; whereas in actions for torts "every particular and phase of the injury may enter into the consideration of the jury in estimating compensation, loss of time, with reference to the injured party's condition and ability to earn money in his business or calling; his loss from permanent impairment of faculties, mental and physical pain and suffering, disfigurement and expenses."   1 Sutherland on Damages (3d ed.), § 93.   And in an action for tort "the damages are not limited or affected, so far as they are compensatory, by what was in fact in contemplation by the party in fault.   He who is responsible for a negligent act must answer 'for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force.'"   Id. § 16.

As to damages arising from the breach of a contract, our code definitely declares a different rule from that declared as to damages flowing from a tortious act.   Section 4394, relating to consequential damages recoverable for the breach of a contract, is as follows:  "Remote or consequential damages are not allowed when-

ever they can not be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." Sections 4508 and 4509, referring to consequential damages flowing from a tortious act, are as follows: "'Direct' damages are such as follow immediately upon the act done. 'Consequential' damages are such as are the necessary and connected effect of the tortious act, though to some extent depending upon other circumstances." "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer."

The plaintiff in error cites various authorities to sustain its contention that damages arising from the loss of commissions as a traveling salesman which the plaintiff might have earned but for the negligence of the defendant, resulting in his loss of time, etc., are too remote to be recovered. In the case of *Seaboard Air-Line Railway* v. *Harris,* 121 *Ga.* 707 (49 S. E. 703), the court held: "Where a traveling salesman, whose compensation is based on commissions on such orders, secured by him, as his employer approves, shipped his trunks of samples over the line of a common carrier, and they were unreasonably delayed, he can not, in a suit for breach of the contract to convey, recover as damages for such delay the profits from orders which, tested by past experience, he would have secured during the period he was without his trunks. Such damages are too remote and speculative, grow out of an enterprise collateral to the contract to ship the trunks, and are not such as the parties contemplated, when the contract was made, as the natural result of its breach." It will be observed that the plaintiff in that case sought to recover damages under a *contract* with a common carrier to transport him and certain trunks. In *Georgia Railroad* v. *Hayden,* 71 *Ga.* 518 (51 Am. Rep. 274), a theatrical manager sought to recover damages for a breach of contract where he purchased tickets for himself and troupe over a railroad, at the terminus of which they were to take a connecting train and proceed to a point at which a performance was to be given. A certain number of tickets to this performance had been sold, and, owing to a

collision of other trains on the first railroad, the train taken by the plaintiff and his troupe was delayed, he missed connection with the next train, and failed to reach his destination in time for the performance, so that the money already taken in for tickets was refunded to the purchasers of seats. It was held in that case that "the damages resulting from the particular character of the business of the traveler, unknown to the railroad company contracting with him, are too remote to be recovered." There also the suit was for the breach of a *contract*. In *Central Railroad* v. *Senn*, .73 *Ga.* 705, the court simply held that in an action for damages for injuries sustained by a passenger on a railroad train, "the witness can not give an opinion as to the amount of damages, but must state facts, and let the jury say from the facts what is the amount of the damages." In *Bryan* v. *Southwestern Railroad Co.*, 41 *Ga.* 72, the court held, that "remote or consequential damages are not allowed whenever they can not be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise, entered into in contemplation of the contract." The holding in that case is identical with code-section 4394, quoted above, and refers to damages from breach of *contract*. In the case of Southern Ry. Co. v. Myers, 87 Fed. 149 (32 C. C. A. 19), the Circuit Court of Appeals of the United States, passing on a damage suit originating in Georgia, held that "Where the leader of a theatrical troupe is injured by the wreck of a train upon which the troupe is traveling, the elements of his damages are injury to his person, medical expenses, maintenance of himself and troupe while disabled by the accident, wages paid to members of the troupe during the same time, and the reasonable value of his own time lost." The court in that case held also that profits expected to accrue from a theatrical performance were too remote to be allowed; and it was doubtless because of this holding that counsel for the plaintiff in error cited that case. No other authorities except the code sections are cited by counsel for the plaintiff in error to sustain its contention that the damages flowing to the plaintiff from the loss of commissions on sales were too remote for recovery.

In the case of *Cooper* v. *National Fertilizer Co.*, 132 *Ga.* 529, 535 (64 S. E. 650, 653), the court said: "A plaintiff who seeks a

reparation in damages to his business, from a breach of contract, is limited to the recovery of damages which are the natural and material consequence of the act from which the damage flows. Loss of prospective profits is ordinarily too remote for recovery." It will again be noted that the damages referred to arise from the breach of a *contract*. In *Propeller Tow-Boat Co.* v. *Western Union Telegraph Co.*, 124 *Ga.* 478 (52 S. E. 766), the court held that certain damages arising from error in transmitting a telegram were not too remote and speculative to be the basis of recovery, under the facts of that case. The damages, however, arose from the breach of a *contract*. On the other hand it was distinctly held in *Broyles* v. *Prisock*, 97 *Ga.* 643 (25 S. E. 389), that "It was competent for the plaintiff, in an action for damages resulting from personal injuries, to testify that when injured he was earning a stated monthly salary as assistant jailer, it appearing that because of the injuries he was deprived of this situation and his salary in connection therewith for three months. The evidence was admissible not only to show the actual loss of salary for that period, as a basis for computing in part his damages, *but also to throw light generally upon his capacity to earn money.*" See also *Nashville, Chattanooga & Saint Louis Railway* v. *Miller,* 120 *Ga.* 453 (47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210). In *Central Railway Co.* v. *Perkerson,* 112 *Ga.* 923 (38 S. E. 365, 53 L. R. A. 210), the court held: "In an action for the homicide of a railroad employee, proof of his usual earnings as such employee, within a reasonable period of time prior to his death, is admissible. There is no arbitrary rule which confines the proof upon this point to what he was actually earning at the time of his death."

More directly, on the admissibility of proof as to the earnings of the plaintiff, we may say that where such earnings have been the reward of his personal skill, the "proof that future earnings will correspond to those previously received need not be very cogent in order that an award of damages, based on past earnings, may be sustained. 4 Suth. Dam. (3d ed.), 3619. In 1 Sedgwick on Damages (9th ed.), 340, it is said: "In a very large class of cases the earnings of the injured party have depended entirely on his individual abilities, as in the case of professional men and teachers, and traveling salesmen who are paid by a percentage on their sales. In the case of most professional men, there can be no way

of fixing a general scale of remuneration. The exclusive services of such men can not be measured by any pecuniary scale common to a whole class. The most trustworthy basis of damages in such a case is the amount which the injured party has earned in the past." In 13 Cyc. 47 F, it is said: "Under the general rule that the party injuring another by a wrongful act is liable for all the direct injury consequent thereto, although it may not have been contemplated as the probable result, the loss or diminution of capacity to follow one's usual business or employment is a proper subject for compensation. In those cases where the plaintiff is a professional man, great difficulty has been experienced in arriving at the amount calculated to compensate him for his impaired earning capacity. It has been held, however, that inability to compute the amount with accuracy is no reason why evidence of all the circumstances and business surroundings of the plaintiff may not be given to the jury, since it is not the plaintiff's fault that the inquiry has become necessary; and where such evidence is capable of being produced it may be shown what his average annual or monthly earnings were. In actions of tort, where the *quantum* of damages is very much within the discretion of the jury, evidence of the nature and extent of the plaintiff's business, and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received, not on the ground of its furnishing a measure of damages to be adopted by the jury, but to be taken into consideration by the jury, to guide them in the exercise of that discretion which to a certain extent is always vested in them."

As laid down in the Encyclopedia of Evidence, vol. 4. pp. 22, 23, 24, "In actions founded on contract, it is generally held that the plaintiff is entitled to show such profits as would have accrued to him from the contract itself as the direct and immediate results of its fulfillment;" and on the other hand, "as a general rule, in actions purely of tort, where the amount of profits lost by the injury can be shown with reasonable certainty, they are not only admissible in evidence, but they constitute thus far a safe measure of damages," and "a party may testify to his daily receipts and profits as a basis for fixing the amount of damages." It is of course unnecessary to say that loss of profits must be shown by proof of facts as to past earnings, capacity, etc., upon which a jury

may base a conclusion. In Vicksburg and Meridian Railroad Company *v.* Putnam, 118 U. S. 545 (7 Sup. Ct. 1, 30 L. ed. 257), the court held that in an action for personal injuries, the plaintiff is entitled to recover compensation for the loss caused to him by the defendant's wrongful act, including expenses incurred for medical attendance, a reasonable sum for his pain and suffering, *and a fair recompense for the loss of what he would otherwise have earned.* In Illinois Cent. R. Co. *v.* Davidson, 76 Fed. 517 (22 C. C. A. 306), a recovery which included earnings, consisting of commissions made by a salesman, was sustained, and the court held that evidence of such earnings in the past was admissible as going to show the amount of damages. In Paul *v.* Omaha & St. Louis Railway Company, 82 Missouri App. 500, the court held: "In a personal-injury case the average earnings of the plaintiff, where he has no fixed salary, are proper to go to the jury on the extent of his loss." In *Seaboard Air-Line Railway* v. *Reid,* 6 *Ga. App.* 21 (63 S. E. 1131), it was said that "the assessing of damages for that which is to take place in the future must in nearly every case border on speculation;" and this is undoubtedly true.

It is well-nigh impossible to furnish absolutely precise evidence as to the probable earnings of a professional man, as we see from some of the authorities cited above, and no good reason appears why the same difficulty would not arise in definitely establishing what the earnings of a salesman, from commissions on such sales as he might effect through his personal skill, energy, and address, would or might amount to. The very difficulty which confronts a plaintiff seeking to recover such probable earnings on account of time lost through the tortious act of another is responsible for the more liberal rule generally adopted and the greater latitude allowed by the courts in the matter of such proof, since every right must have its remedy, and strict requirement along this line might deny a sufficient remedy to one who happened to be laboring not for a fixed and definite salary, but for fees or commissions. What better evidence could be offered to establish a man's earning capacity or his skill and ability in a particular business than a statement as to his past earnings, under like conditions, during a similar period of the year, immediately prior to the period for which he seeks to recover? Where by the very nature of things no better evidence is available or possible of production, the law

perforce contents itself with proof of past average earnings, not always perhaps as proof of actual lost profits, but as illustrating the earning capacity of the plaintiff, and hence the value of his lost time. In this particular case the plaintiff asserted that conditions were actually better in 1912, up to the time of his injury, than they had been in the preceding year, and that in 1911 he had earned the sum of $5,600 during the same months and period of time that he was incapacitated by his injuries in 1912.

3. The remaining special ground in the motion for a new trial is that the verdict of $6,000 was excessive, and this ground we may consider briefly in connection with the general grounds in the original motion. There was evidence sustaining the plaintiff's contention that he was seriously and perhaps permanently injured, that his earning capacity had been entirely suspended for twelve weeks, and largely diminished since that time, and would be lessened as long as his suffering remained; that he had suffered a broken nose, contusions on the head, bruises on his back, and injury to his spine, which had caused him great physical and mental pain and anguish; that he had been compelled to go on crutches for some time, and was still unable to attend to his business unaided or to carry about his sample case; that he had been attended by physicians for months and had been practically an invalid since his injuries, though prior to that time he had been a hale and hearty man of about forty-one years of age. He testified, as already stated, that in 1911 he earned $5,600 at the same business, selling the same articles, under like conditions, and during a period corresponding to that in which he was incapacitated in 1912.

It appears, from the testimony, that the collision which resulted in injury to the plaintiff was caused by the grossest negligence, as the freight cars with which the plaintiff's train collided were left standing on the main line or track, directly in the way of the oncoming train on which plaintiff was a passenger. Under this proof, the verdict was certainly not unwarranted or excessive; and since there was sufficient evidence to sustain the verdict, we could not set it aside here, except for error of law.

*Judgment affirmed.*