39381. THE KROGER COMPANY v. PERPALL *et al.*

DECIDED APRIL 3, 1962.

*Woodruff, Latimer, Savell, Lane & Williams, Edward L. Savell,* for plaintiff in error.

*Smith, Field, Ringel, Martin & Carr, Sam F. Lowe, Jr.,* contra.

RUSSELL, Judge. ■ The allegations of the petition that the defendant through its driver was negligent in failing to provide blocks to prevent the tractor-trailer unit from rolling forward after it had been parked is attacked by special demurrers 1

and 24 on the grounds that the petition fails to plead facts showing any necessity for providing blocks to prevent the unit from rolling forward or to allege that the driver either failed to apply parking brakes or knew that the parking brakes would be insufficient. The petition does allege that the brakes were inadequate to hold the vehicle, that the driver was on notice that the unit was heavy and contained a heavy load (in excess of a 50,000 pound total) and that he was on notice that the vehicle was parked headed downhill where it would receive a maximum gravity pull. Where brakes are inadequate to hold a vehicle in the position in which it is parked, actionable negligence in failing properly to "scotch" the wheels may be pleaded and proved. *Scoggins v. Peggy Ann of Ga., Inc.,* 87 Ga. App. 19 (73 SE2d 79). Nor need actual knowledge by the driver be shown that the vehicle would not remain in its parked position, if under the circumstances a jury might find that the vehicle did in fact break loose and that the failure to take proper precautions to prevent it from doing so constituted a lack of ordinary care on the part of the driver.

■ Special demurrers 10, 12 and 13 attack allegations of the petition and the exhibit attached thereto on the ground that they fail to allege the correct measure of damages as to the personal property loss. Exhibit "A" lists 64 items of dental equipment, together with its fair market value immediately prior to the injury. Paragraph 6 alleges that, except for two items, all were totally destroyed and their value as scrap metal was less than the reasonable cost of removing them from the building. As to the two remaining items, the cost of repair alone is given. Since the measure of damages to personal property is the difference in market value before and after the damage (*Douglas v. Prescott,* 31 Ga. App. 684 (1), 121 SE 689) all but two of these items unquestionably comply with the rule. No special demurrer directs itself specifically to the two items on which cost of repair is listed. A special demurrer must be perfect; it cannot attack a whole paragraph, or a whole exhibit, of which a part only is subject. *Carusos v. Briarcliff, Inc.,* 76 Ga. App. 346 (45 SE2d 802); *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 319, 325 (60 SE2d 802). The special demurrers are without merit.

■ It is further alleged that the real property occupied by plaintiffs in which their dental offices were located was damaged to an extent that it took over two weeks to repair it; that plaintiffs made every effort to resume their dental practice as soon as possible by described means, but in spite of their best efforts one plaintiff was unable to practice dentistry for four full days and the other for 3½ days. It is alleged that the days in question had been scheduled with appointments as full working days; the gross value of income per day is alleged as to each plaintiff based on the previous year's average daily income, and there are deducted therefrom the detailed expenses of earning such income which were saved by reason of the fact that plaintiffs could not in fact practice during those days. Defendant demurred to these allegations on the grounds that the proper method of computing loss of income is not alleged, and that the loss is too vague, indefinite and speculative to constitute an item of recovery.

In tort actions consequential damages which are the necessary and connected effect of the tortious act, and which are the legal and natural result of the act, may be recovered, though contingent to some extent. *Code* §§ 105-2007, 105-2009. "A very definite difference is generally recognized between consequential damages which may be recovered for the breach of a contract and similar damages recoverable for a tort . . . in actions for torts 'every particular and phase of the injury may enter into the consideration of the jury in estimating compensation, loss of time, with reference to the injured party's condition and ability to earn money in his business or calling . . . the damages are not limited or affected, so far as they are compensatory, by what was in fact in contemplation by the party in fault. He who is responsible for a negligent act must answer for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force.' " *Southwestern R. Co. v. Vellines,* 14 Ga. App. 674, 683 (82 SE 166) quoting 1 Sutherland on Damages (3d ed.) §§ 93 and 16. Such consequential damages may include loss of time, and the usual average earnings of the plaintiff may be shown as a basis for recovery, if the proof is

reasonably certain. Id., headnote 2. Where the plaintiff is a professional man not working on a fixed salary, there is no other way for him to show loss of income. "[T]he earnings of one skilled in any particular vocation are not dependent upon the profits earned in any one business enterprise. A salesman who is paid a percentage of his gross sales, like a lawyer, doctor, or other professional man, can show his ability to labor and earn only by proof of what his average earnings were for a reasonable period prior to the time such evidence is offered. That a salesman, or other person working for commissions or fees, has up to the time that he is injured earned a certain amount, and thereafter has, on account of incapacity to work resulting from the injury, been able to earn less, is evidence both of the amount of the loss of earnings for the period [between the] time of the injury and the time of trial, and if such injuries be shown to be permanent, the probable reduction in his earning capacity." *Tifton Brick &c. Co. v. Meadow*, 92 Ga. App. 328, 332 (88 SE2d 569). And, as stated in Chesapeake &c. R. Co. v. Shanks, 260 Ky. 516 (86 SW2d 128, 130): "Loss of time, with reference to the injured party's condition and ability to earn money in his business or calling, is universally regarded as a proper element of compensation. Often this is chiefly the pecuniary loss where the plaintiff was prevented from pursuing his accustomed employment or business. Difficulty in proving definitely the value cannot relieve the wrongdoer of his obligation, although conjectural or purely speculative evidence is to be disregarded. If the injured person was employed at fixed wages or salary, the amount lost may be readily determined. If he was not of that class, evidence concerning his occupation or profession, its nature and extent, his ability to engage therein, and the antecedent pecuniary rewards for his personal skill and services may be shown." Where damages are sought for the interruption of an established business or profession, it is proper to calculate the lost income or profits by showing the amount of time lost and the average value of such loss based on operations for a reasonable period immediately prior thereto. *Atlanta Gas Light Co. v. Newman*, 88 Ga. App. 252 (2) (76 SE2d 536). It is recognized that a property loss, as distinguished from a

personal injury, would only entitle the plaintiff to damages for that reasonable period of time which it would take him to make other arrangements for carrying on his profession, but here the lost time is alleged as being only three and a half days as to one plaintiff and four days as to the other, which is certainly reasonable under the circumstances. There was no error in overruling these special demurrers.

■ The first grant of a motion for new trial will not be disturbed by this court where there is any evidence to support the contentions of the movant, and unless a verdict for the opposite party is demanded as a matter of law. *Code* § 6-1608; *Cox v. Independent Life &c. Ins. Co.,* 101 Ga. App. 211 (113 SE2d 228). The plaintiff in error here, defendant in the trial court, strongly contends that the grant of a new trial was error because there was not enough evidence to make a jury question on the defendant's negligence; in other words that, had a verdict been returned for the plaintiffs, the defendant would have had a right to a judgment in its favor notwithstanding such verdict. The evidence is uncontested that the tractor-trailer unit in question, together with its load, weighed 33,400 pounds; [stipulated] that it was parked by the driver, Dowda, an employee of the defendant, in front of a restaurant and left unattended for approximately a half hour in such manner that the front of the unit was headed downhill and pointed toward the building where the plaintiffs had their dental offices, about 200 yards from that building and 20 feet above it on the slope of the hill; that the tractor-trailer unit did actually roll down the hill and crash through the outer wall and into the office of the plaintiffs, causing the damage described in the petition. No one was actually watching the vehicle at the time; the defendant contends that under its evidence it is impossible that the unit rolled away because of any negligence of the driver or any defect in the mechanism of the vehicle, and accordingly it must have been tampered with by some other unknown person, or rolled away because of some other unexplained cause unconnected with any negligence on the part of the defendant; or, at least, that the evidence points indifferently at these various explanations and accordingly, being circumstantial, fails in any degree to

support the contentions of the plaintiffs. It is true that the evidence of the driver was that he parked the unit at a spot which was shown by other evidence to be approximately a 1% grade; that he pulled the emergency brake up in the floor-board as far as he could go, and that in his opinion the unit would have stayed in position with just the emergency brakes pulled up; nevertheless, immediately on being informed that the unit had crashed into plaintiffs' building the driver rushed to the scene and immediately checked the mechanical brake and found it still in position indicating that the emergency brake did not hold the vehicle. He further testified as to the airbrake system that when the pressure built up to 65 pounds per cubic inch a signal flag would stand upright, indicating that there was sufficient braking power to operate the vehicle, but at 60 pounds pressure or lower the flag would fall down; that when he got into the cab of the tractor the flag was down; that he ran the engine until the flag went up at 65 pounds pressure; that he believed the pressure got up to 80 before he left the yard; that standard operating pressure is 110 to 120 pounds and in the mile and a quarter which he drove from the yard to the restaurant it should have reached that point; that nevertheless, on arriving at the scene of impact after the accident he immediately checked the flag and it was down; and that he did use his brakes during this 5-minute drive, which decreased his air brake. He also testified that the system would not leak out sufficiently to lose braking power during the 30-minute interval he was in the restaurant, but it was further established that air leaks or bleeds from all such air brake systems; that there had been trouble with this particular unit in that the air pressure would be down in the system when it remained in the yard a few hours; that the driver had had trouble with it the week before and the air was down when he started it on the night in question; that "sometimes they lose it on short periods of time," that "a new one might not leak hardly as fast, but it's a normal thing for them to lose air," and that this unit had been driven over 400,000 miles with the same brake system. In addition, when queried by a police officer immediately after the event as to what caused it, he replied that he believed the air had leaked

out of the system. Thus the driver himself, while staunchly contending that the mechanical brake alone would hold the unit, showed that immediately after the crash he found it in the same position he had left it, so that obviously it did not hold the unit, and although he contended on the trial that he had built up the air pressure in the air brake system to an extent that it would not leak out while parked sufficiently to destroy braking efficiency, he also showed that his opinion immediately afterward was that it had leaked out, and that this was based on his finding that the safety flag was down, indicating loss of pressure below the safe braking level. The witness, an employee whose negligence was in question, and whose testimony was in the respects pointed out inconsistent, was one whose interest or lack of it in the result of the suit might be considered by a jury. "The fact that a witness is an employee of one of the parties is a proper matter to be considered by the jury in passing upon his credibility." *Central of Ga. R. Co. v. Bagley*, 121 Ga. 781 (4) (49 SE 780). "While direct and positive testimony, given by an unimpeached witness as to the existence of facts apparently within his own knowledge, and not in itself incredible, impossible, or inherently improbable, cannot be arbitrarily rejected by a jury or other trier of facts upon the mere surmise that it perhaps might not be in accord with the truth, yet, where such testimony is contradicted by proof of facts or circumstances that could be taken as incompatible with such testimony, the question of which theory thus presented by conflicting evidence will be accepted is a question to be determined by the jury or other trier of facts." *Pantone v. Pantone*, 206 Ga. 305 (2) (57 SE2d 77). While the driver, Dowda, testified as to where he believed he had parked the tractor-trailer combination, a jury would not necessarily have to accept that he remembered the exact spot, and there was ample testimony as to the slope and contour of the hill from which it appeared that had the unit in fact been parked only one length away from the spot where the driver said he believed he had parked, it would have been on a 5% rather than a 1% grade, and that in any event the percent of grade would increase rapidly as the unit moved forward. There was no testimony at all from

which an inference might arise that the truck had been tampered with; indeed, the fact that the emergency brake which the driver said he placed in position on parking the vehicle was still in place just after it crashed through the building authorizes a clear inference that it was not. As to the air brakes, also, there was evidence that air would leak out of the system at all times, that it would leak out faster with the brakes set, as here, and that it might leak out faster in old systems than new ones. The driver did not remember what the air pressure gauge read when he left the unit; he merely assumed it was sufficient because of the time he had driven the vehicle, but he had also used his brakes to an undetermined extent during that distance. He also stated the tractor was in 3rd or middle gear, while under the testimony it appeared that low or reverse gear would have had more holding power. While courts throughout the country show some conflict as to whether a jury question remains in the case after positive testimony by the driver of facts showing the parked vehicle would not have moved without application of an outside force, the majority of the cases consider that it does. See Annotation, 16 ALR2d 979, et seq. where it is stated, p. 982: "The situation where a parked automobile runs away and works injury is a natural one for the application of the doctrine of res ipsa loquitur, and the courts appear to be agreed that, in the absence of explanatory circumstances, such an occurrence justifies a presumption or inference of negligence, making a prima facie case for the plaintiff, and casting upon the defendant the burden of coming forward with evidence to overcome or at least balance the inference. . . The greater number of cases unite in holding that mere testimony of the defendant that, in parking his vehicle, he took all possible or reasonable precautions, does not necessarily overcome the effect of the inference."

The contention of the plaintiff in error, following Hughes v. Jolliffe, 50 Wash. 2d 554 (313 P2d 678) and similar cases that, if a car remains in a parked position on an incline for a substantial length of time without moving, the doctrine of res ipsa loquitur will not apply because of the probability of an intervening cause, whether sound or not, does not apply here because the

undisputed testimony was that the longer this tractor remained in position the lower the air pressure in the brake system would become. Plaintiff in error also puts forward an opposite contention, to the effect that the defendant showed by its testimony that the tractor did not remain in its position long enough for the air to escape and allow the braking system to fail, but, as shown above, the jury was not necessarily bound to accept this testimony or other similar testimony based on tests made at a different time and under different circumstances. Since there was evidence in the case from which the jury might have found in favor of the plaintiff, the trial judge did not abuse his discretion in the first grant of a new trial.

■ After the driver left the yard on the night in question he drove to a shopping center where he was to unload merchandise, but stopped first at a restaurant in the same center for the purpose of eating supper, a practice regularly followed by drivers of Kroger trucks and to which the employer did not object. Under these circumstances there was no such deviation from employment as to relieve the employer from whatever liability it would otherwise have. *Causey v. Swift & Co.*, 57 Ga. App. 604, 608 (196 SE 228).

There was no error in overruling the demurrers or in granting the motion for a new trial.

*Judgment affirmed. Carlisle, P.J., and Eberhardt, J., concur.*