A10A1946. DOSSIE v. SHERWOOD.
(707 SE2d 131)

DILLARD, Judge.

In this personal injury action, appellee Corey Sherwood sued appellant Kecia Dossie for injuries he received as a result of Dossie

---

[39] *Id.* at 179-80 (3).

driving her vehicle into his own, while allegedly operating her vehicle in a negligent manner. Following a trial, the jury returned a verdict in favor of Sherwood pursuant to a general-verdict form. Without challenging the jury's finding of liability, Dossie argues on appeal that the trial court erred by denying her motion for directed verdict on the issue of lost earnings, which she claims resulted in a jury verdict based upon speculation and guesswork. We disagree and affirm.

Our case begins with Sherwood's decision to make a go of the "American dream." After eight years of employment with Sears as a delivery helper (and just three months before the accident in question), Sherwood purchased a delivery truck and started his own business working for a carrier company that contracted with him to deliver furniture on behalf of large retail outlets (like Sears). Tragically, this business venture was short lived due to a wrist injury Sherwood sustained as a result of the accident involving Dossie — which prevented him from working and/or operating his business for six months, caused him to lose his delivery contract with the carrier company, and forced him back into employment as a contractor's helper.

Thereafter, Sherwood sought damages to compensate him for his medical expenses, the general pain and suffering he experienced as a result of the accident, and the lost earnings he suffered during the six-month period he was unable to work or operate his business.[1] At the close of evidence, Dossie moved for a directed verdict on the issue of Sherwood's lost earnings, which the trial court denied. The jury then returned a general verdict awarding Sherwood damages in the aggregate amount of $28,727.92.[2] This appeal follows.

At the outset, we note that a directed verdict is not proper unless "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict."[3] Moreover, in considering whether the trial court erred by denying a motion for directed verdict, this Court "must view and resolve the evidence and any doubt or ambiguity in favor of the verdict."[4] Thus, we review a trial court's denial of a motion for directed verdict using the "any evidence" standard,

---

[1] Sherwood did not, however, seek compensation for the loss of future earnings because he regained the full functioning of his wrist by the time of trial.

[2] Sherwood submitted bills evincing approximately $4,875 in medical expenses.

[3] *Gipson v. Phillips*, 232 Ga. App. 235, 235 (501 SE2d 570) (1998) (citations and punctuation omitted); *see also Fouts v. Builders Transp., Inc.*, 222 Ga. App. 568, 577 (474 SE2d 746) (1996) (same).

[4] *Gipson*, 232 Ga. App. at 235 (citation and punctuation omitted); *see also S. Store & Rest. Equip. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268) (1990) (same).

during which we construe the record in the light most favorable to the nonmoving party.[5]

Here, Dossie argues that the denial of her motion for directed verdict on the issue of lost earnings resulted in a jury verdict based upon speculation and guesswork. Dossie, however, failed to request that the jury's damage award be apportioned, and otherwise did not object to the use of a general-verdict form. And because the jury did not segregate how much of its award was attributable to loss of earnings, as opposed to medical expenses and/or general pain and suffering (which includes a component of mental suffering for a diminished capacity to labor),[6] it is impossible to discern what amount, if any, Dossie alleges to have been improperly awarded. Consequently, she has waived this argument.[7] But even in the absence of such a waiver, the trial court did not err in concluding that Sherwood presented sufficient evidence to allow the issue of his lost earnings to go to the jury.[8]

---

[5] *See, e.g., Turnage v. Kasper*, 307 Ga. App. 172, 178-79 (1) (704 SE2d 842) (2010).

[6] *Myrick v. Stephanos*, 220 Ga. App. 520, 521 (2) (472 SE2d 431) (1996) (" 'Diminished capacity to labor' is an element of pain and suffering recoverable by one who is physically injured [and] . . . is an item of general damages." (citations omitted)).

[7] *See, e.g., The Pep Boys–Manny, Moe & Jack, Inc. v. Yahyapour*, 279 Ga. App. 674, 677 (5) (632 SE2d 385) (2006) (concluding that appellants waived any challenge to the jury's damage award because they failed to request that the verdict be apportioned to specifically set forth the amount attributed to lost earnings); *Williams v. Adams*, 170 Ga. App. 35, 36 (1) (316 SE2d 1) (1984) (same); *see also Setliff v. Littleton*, 264 Ga. App. 711, 713 (1) (592 SE2d 180) (2003).

[8] There was some confusion in the parties' appellate briefs, as well as in the trial court below, as to whether Sherwood's claim was better characterized as one for lost wages or lost profits. Neither characterization is accurate. Sherwood is an independent contractor (not an employee), and he therefore does not receive wages for his delivery services. And while the income Sherwood received for such services could be characterized as profits in a generalized sense, the damages he seeks in *tort* are for his *lost earnings* during the six-month period he was unable to work as a result of the wrist injury caused by Dossie's negligence. The distinction between damages for lost profits and lost earnings is one that has long been recognized in Georgia. *See Sw. R.R. Co. v. Vellines*, 14 Ga. App. 674, 688-89 (82 SE 166) (1914) (holding that "[t]he very difficulty which confronts a plaintiff seeking to recover such probable earnings on account of time lost through the tortious act of another is responsible for *the more liberal rule generally adopted and the greater latitude allowed by the courts in the matter of such proof, since every right must have its remedy, and strict requirement along this line might deny a sufficient remedy to one who happened to be laboring not for a fixed and definite salary, but for fees or commissions,*" and that "[w]here by the very nature of things no better evidence is available or possible of production, the law perforce contents itself with proof of past average earnings, not always perhaps as proof of actual lost profits, *but as illustrating the earning capacity of the plaintiff,* and hence the value of his lost time" (emphasis supplied)). In any event, Sherwood's lost earnings are recoverable from the time of his personal injury until the date of trial, so long as causation is established and the amount sought is sufficiently proven. *See, e.g., Kroger Co. v. Perpall*, 105 Ga. App. 682, 686 (3) (125 SE2d 511) (1962) ("If the injured person was employed at fixed wages or salary, the amount lost may be readily determined[;] [i]f he was not of that class, evidence concerning his occupation or profession, its nature and extent, his ability to engage therein, and the antecedent pecuniary rewards for his personal skill and services may be shown." (punctuation omitted)); *see also Gipson*, 232 Ga. App. at 235-36 (including as lost earnings retiree's anticipated profits derived from odd jobs); *Fouts,*

In Georgia, the loss of one's earnings from the date of injury to the date of trial as a result of a personal injury is a separate and distinct pecuniary damage that is recoverable, so long as the amount can be determined with reasonable certainty.[9] Moreover, if it has been sufficiently established that the loss of earnings was caused by the tortious conduct of the defendant, the fact that the exact measure of the earnings lost may be challenging for the jury to calculate does not preclude their recovery. As we have previously explained,

> [t]he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted.[10]

---

222 Ga. App. at 577 (4) (including as lost earnings saleswoman's anticipated income from sales of kitchenware); *Mote v. Tomlin*, 136 Ga. App. 616, 618 (2) (222 SE2d 57) (1975) (including as lost earnings carpenter's reduction in income derived from activities as an independent contractor); *Carroll v. Morrison*, 116 Ga. App. 575, 576 (3) (158 SE2d 480) (1967) (including as lost earnings waitress's estimated loss of tips).

[9] *See, e.g., Gipson*, 232 Ga. App. at 236 (noting that damages at issue could be characterized as either "lost profits" or "lost earnings," and holding that "even if we were to find the evidence was insufficient to provide a basis for calculating lost profits, reversal is not required where the trial court properly charged the jury that lost earnings were recoverable 'where the evidence shows with reasonable certainty the amount of the loss' " (citation omitted)); *Fouts*, 222 Ga. App. at 577 (4) (noting the distinction between lost profits and lost earnings, and holding that the evidence presented at trial supported a claim for lost earnings); *Quiktrip Corp. v. Childs*, 220 Ga. App. 463, 467 (5) (469 SE2d 763) (1996) ("Lost wages and earnings are recoverable where the evidence shows the amount of the loss with reasonable certainty and the evidence permits the jury to determine the amount of the loss without speculation or guesswork."); *Beal v. Braunecker*, 185 Ga. App. 429, 433-34 (5) (364 SE2d 308) (1987) (holding that trial court did not commit reversible error in charging jury that "reasonable certainty" was the proper standard for establishing the value of plaintiff's "lost earnings," and that "some evidence was all that was required in this matter"); *id.* at 435 (noting the "substantial difference" with respect to the types of evidence necessary to prove damages for "lost profits" and "lost earnings," and that "[t]o recover for lost profits the damages must be proven definitely," whereas "lost earnings may be recovered if the proof is reasonably certain and not mere speculation or guesswork") (Beasley, J., dissenting); *Douglas v. Rinker*, 134 Ga. App. 949, 950 (216 SE2d 629) (1975) (holding that "[l]ost earnings can be recovered if the proof is reasonably certain"); *Kroger Co.*, 105 Ga. App. at 686 (3) ("Loss of time, with reference to the injured party's condition and ability to earn money in his business or calling, is universally regarded as a proper element of compensation." (punctuation omitted)).

[10] *Crosby v. Spencer*, 207 Ga. App. 487, 488 (1) (428 SE2d 607) (1993) (punctuation omitted).

And at trial, Sherwood gave uncontroverted testimony that, as a result of the accident and his inability to work for a six-month period, he lost his business as a delivery contractor and was forced to return to work as a contractor's helper (in which capacity he earned less money). This testimony was then corroborated by Sherwood's physician, who confirmed for the jury Sherwood's physical limitations during the period in which he was unable to work. Sherwood also called as a supporting witness the assistant manager of the carrier company he contracted with to make deliveries, who testified that Sherwood was—as a delivery contractor—guaranteed payment of no less than 60 percent of the daily $630 hauling revenue generated by his truck (from which he had to pay expenses), and that he was estimated to earn approximately $50,000 to $54,000 per year after those expenses were paid. And while he had only worked as a delivery contractor for approximately three months prior to the accident, Sherwood submitted an activity report and earning statements tending to support those estimations. Thus, the jury was presented sufficient evidence from which to calculate an award of probable lost earnings with reasonable certainty, and the verdict fell within the range of that evidence.[11]

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

### DECIDED MARCH 3, 2011.

*Gray, Rust, St. Amand, Moffett & Brieske, Michael D. St. Amand, Marcus W. Wisehart*, for appellant.
*George W. Brinson*, for appellee.

---

[11] *See, e.g., Olariu v. Marrero*, 248 Ga. App. 824, 827 (3) (a) (549 SE2d 121) (2001) (physical precedent only) (affirming award of lost earnings based upon plaintiff's expected earnings from an employment offer that she had accepted but not yet begun to perform); *Gipson*, 232 Ga. App. at 236 (affirming award of lost earnings calculated using plaintiff's average weekly income doing odd jobs and grading work prior to the date of injury); *Quiktrip Corp.*, 220 Ga. App. at 467 (5) (affirming construction contractor's lost earnings established using evidence of prior income despite the fact that he had worked little during the time preceding the accident and had faced several layoffs); *Am. Ass'n of Cab Cos. v. Egeh*, 205 Ga. App. 228, 230 (3) (421 SE2d 741) (1992) (affirming jury's award of lost earnings to cab driver calculated using sample trip sheets); *Kroger Co.*, 105 Ga. App. at 686 ("Where damages are sought for the interruption of an established business or profession, it is proper to calculate the lost income or profits by showing the amount of time lost and the average value of such loss based on operations for a reasonable period immediately prior thereto.").