**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 5, 2026

# In the Court of Appeals of Georgia

A26A0226. GAMMA HOMES, LLC et al. v. ATLANTA REAL ESTATE SPECIALTY GROUP, LLC.

DOYLE, Presiding Judge.

Following a bench trial, the plaintiffs,[1] a group of limited liability companies controlled by Hans Klein for the purpose of owning and operating real estate investment properties, appeal from the involuntary dismissal of their suit against Atlanta Real Estate Specialty Group, LLC, ("ARESG") under OCGA § 9-11-41(b). They contend that the trial court erred because (1) there was evidence to support an

---

[1] The plaintiffs are: Gamma Homes, LLC; Garden 443, LLC; Bristol Lands, LLC; JWest Investments, LLC; Horizon Listings, LLC; Barrel South, LLC; JCT Property, LLC; Fulton West Residential, LLC; White 44, LLC; Twelve Trees, LLC; Fremont Links, LLC; Seven Seven Line, LLC; Atmosphere Homes, LLC; WWK Attractive, LLC; Lawful Wheels, LLC; Channel TT, LLC; Discover Laurel, LLC; and Lawn Marcy, LLC (collectively, "the Plaintiffs").

award of damages, aside from certain disputed exhibits not admitted by the trial court; (2) the disputed exhibits were nevertheless admissible both as (a) business records and (b) as admissions by a party opponent; and (3) the plaintiffs have demonstrated a viable claim for attorney fees under OCGA § 13-6-11. For the reasons that follow, we reverse and remand for further proceedings.

> In reviewing a bench trial, we view the evidence in the light most favorable to the trial court's rulings, defer to the trial court's credibility judgments, and will not set aside the trial court's factual findings unless they are clearly erroneous. A trial court's involuntary dismissal of a claim pursuant to OCGA § 9-11-41 (b)[2] may be reversed only if the evidence demands a contrary finding. But a trial court's conclusions of law are subject to de novo review[, a]nd the application of the wrong legal standard may be reversible error.

*Smith v. Northside Hosp., Inc.*, 302 Ga. 517, 520 (807 SE2d 909) (2017) (cleaned up).

---

[2] OCGA § 9-11-41(b) provides, in relevant part:
After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

The facts material to this appeal are undisputed. Through the Plaintiffs, Klein owns and operates a number of residential rental properties in Atlanta.[3] Each of the Plaintiffs executed nearly identical property management agreements ("PMAs") with ARESG, operated by Robert Taylor, who provided property management services, including collecting rent, paying expenses, and making monthly disbursements of remaining balances to the property owner. Under the PMAs, ARESG deposited rent payments into trust accounts, and ARESG was required to provide a "detailed monthly accounting of funds ... received and disbursed on [o]wner's behalf," with the remaining amount (over a certain balance) remitted to the owner monthly. To meet the obligation to provide monthly accounting, Taylor granted Klein access to an owner's portal in a software platform called Buildium, which Taylor used to input data and document income, expenses, and disbursements with the understanding that it would provide this information to Klein. All of the data in Buildium was input by Taylor.

For several years, this process ran smoothly, and Klein received consistent monthly disbursements totaling approximately $30,000, reflecting the net proceeds

---

[3] Many of the properties are single family homes, and some are apartment buildings with 16 to 18 units.

from the properties. Klein tracked the flow of money using statements prepared by Taylor available in Buildium. But eventually, Klein decided to terminate ARESG's services due to Taylor's alleged failure to maintain certain units and provided 60 days notice thereof per the PMAs.

Klein requested the final monthly distribution for June 2023, which according to Klein's testimony, should have been approximately $34,000 based on the income statements available in Buildium at that time. But as Klein concluded his relationship with Taylor and ARESG, Taylor failed to make a final disbursement to Klein, and he failed to provide a final accounting to Klein that would show the state of the accounts associated with each property. By July 2023, Klein's access to Buildium was terminated, and the last available statement was for July 8, 2023. Klein had no way of obtaining a final accounting other than by relying on Taylor, who ultimately never provided one despite months of requests by Klein. But according to Klein's testimony, the documentation available to him showed that there was $34,000 in undistributed income; $15,000 in cash in the bank; security deposits of $7,000; and $2,000 from mistakenly prepaid rent (all sums totaling $58,000)— all of which should have been returned to Klein.

In August 2023, Klein sent Taylor a demand letter explaining his belief that Taylor was "holding approximately $60,000 and perhaps substantially more of my funds from my rental properties." Taylor responded by disputing Klein's claimed figure without providing any evidence, and he asserted that an audit was pending. They continued exchanging emails, with Taylor assuring that he was working on a final accounting but ultimately providing none and failing to give Klein access to Buildium to assess the accounting himself.

Based on this failure to agree on a final accounting and disbursement, the Plaintiffs sued ARESG, seeking damages for breach of the PMAs, promissory estoppel, unjust enrichment, and attorney fees under OCGA § 13-6-11 (making fees available for bad faith, stubborn litigiousness, or causing unnecessary trouble and expense). During the ensuing bench trial, ARESG objected to the admission of three exhibits, Plaintiffs' Exhibits 8, 9, and 10 ("the Exhibits"), on hearsay grounds. The exhibits were reports prepared by Taylor and obtained by Klein through his own access to the Buildium application. The trial court excluded them, and at the close of the Plaintiffs' case in chief, ARESG moved to involuntary dismiss the case under OCGA § 9-11-41(b). The trial court granted the motion on the ground that it could not

5

consider the Exhibits, and the record otherwise lacked "sufficient evidence to show damages for any of the claims." The Plaintiffs now appeal.

1. The Plaintiffs contend that, regardless of any evidentiary rulings as to the disputed Buildium Exhibits, the trial court erred by concluding there was no competent evidence sufficient to authorize an award of compensatory damages and survive involuntary dismissal under OCGA § 9-11-41(b). We agree.

"It is axiomatic that it is the [Plaintiffs'] burden to prove [their] damages. Damages must be proved by evidence which furnishes the [factfinder] with sufficient data to enable them to calculate the amount with reasonable certainty. Proof of damages cannot be left to speculation, conjecture and guesswork." *Olagbegi v. Hutto*, 320 Ga. App. 436, 439–40(2) (740 SE2d 190) (2013). "It is not necessary, however, that the party on whom the burden thus rests should submit exact figures." *Paul Davis Systems of Savannah, Inc. v. Peth*, 201 Ga. App. 734, 736(1) (412 SE2d 279) (1991) (quotation marks omitted). "Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized

with reasonable certainty by the legal evidence submitted." *Dossie v. Sherwood*, 308 Ga. App. 185, 188 (707 SE2d 131) (2011) (quotation marks omitted).

Here, aside from the disputed Exhibits, there was direct testimony from Klein about his history of net income distributed by ARESG, which amounted to consistent payments of approximately $30,000 per month. Further, Klein testified that at the time he terminated his relationship with ARESG, he calculated the amount owed to him as at least $58,000, consisting of $34,000 in undistributed income, $15,000 of cash in the bank, $7,000 of security deposits, and $2,000 in prepaid rent. This testimony was uncontroverted and received without objection, and it adequately removed any guesswork from the calculation of damages to reach an award of at least that amount. ARESG's breach of the agreements was proved in plain terms — it is undisputed that Klein did not receive a final accounting or payout — and Klein explained his calculation of the total ARESG owed. See generally *T & M Invs., Inc. v. Jackson*, 206 Ga. App. 218, 220 (425 SE2d 300) (1992) (holding that testimony as to past wages "would permit the jury to calculate the amount of the loss with a

reasonable degree of certainty"). Based on this record, the trial court erred by ruling that Klein had failed to adduce sufficient evidence to prove compensatory damages.[4]

2. Moreover, the Plaintiffs also correctly contend that the trial court erred by ruling that the Exhibits were inadmissible hearsay and not subject to exceptions as either (a) business records or (b) admissions of a party opponent.

(a) *Business records*. Under OCGA § 24-8-802, "[h]earsay shall not be admissible except as provided by [the pertinent Code]." But under OCGA § 24-8-803(6), certain business records are admissible despite being hearsay:

> Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness ... a ... report, record, or data compilation, in any form, of acts, events, [or] conditions ... [is admissible] if (A) made at or near the time of the described acts, events, [or] conditions ... ; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian *or other qualified witness*[.]

(Emphasis added.)

---

[4] In light of this ruling, the availability of nominal damages is moot.

Although Taylor was not called to testify as to the foundation of the Exhibits, as the trial court expected he would be, Klein did testify. And he was competent to testify as to the circumstances surrounding the creation of the Exhibits and lay the foundation as to their nature.

> To introduce a writing under the business records exception to the hearsay rule, a witness must lay a foundation indicating that he or she is aware of the method of keeping the documents. It is not required that the witness made the records or kept them under his or her supervision or control. Instead, the witness must be able to testify that the record was made (1) in the regular course of business, and (2) at the time of the event or within a reasonable time of the event.

*Grigg v. State*, 372 Ga. App. 96, 101(2) (903 SE2d 787) (2024) (cleaned up).

Here, Klein explained that he was provided access to Buildium by Taylor, who prepared reports in Buildium and entered the data that went into the reports. Consistent with this, at the top of each Exhibit is a notation that the document was "Prepared by Robert Taylor," followed by his address. Klein testified that Taylor entered the data as part of his routine duties as a property manager for Klein, and Taylor provided the data and reports in the Exhibits to Klein on a regular monthly basis in fulfillment of ARESG's obligation under the PMAs. Although Klein himself

9

did not create the reports, he personally accessed them in Buildium, and he had some knowledge as to their creation, how and why they were maintained, and their regular use and purpose through his arrangement with ARESG. Under these circumstances, Klein's lack of personal involvement as to the Exhibits' creation was not fatal to their admission as business records. Cf. *Strobel v. State*, 322 Ga. App. 569, 571 (745 SE2d 796) (2013) ("The witness's lack of personal knowledge regarding how the records were created does not render them inadmissible, but merely affects the weight given to the evidence.").

(b) *Admissions*. Moreover, in addition to being admissible as business records, the Exhibits were admissible as admissions under OCGA § 24-8-801(d)2).

Under OCGA § 24-8-801(d)(2), "[a]dmissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is: ... [t]he party's own statement, in either an individual or representative capacity; ... [or a] statement of which the party has manifested an adoption or belief in its truth."

The Plaintiffs correctly point out that the Exhibits were essentially representations made by Taylor on behalf of ARESG. As explained above, it is undisputed that the Exhibits were generated as part of Taylor's management duties

based on information input by Taylor. They were the method by which Taylor met his obligation to provide monthly reports on the accounts for each property, and Taylor knew Klein relied on them as the owner of the Plaintiff companies.[5]

For example, Exhibit 8 is titled "Rental Owner Ending Balances As of 7/6/2023, For all rentals," and it shows values for available "cash less unpaid bills" for each of the Plaintiff properties. Exhibit 9 is titled "Income Statement Consolidated 6/1/2023 - 7/6/2023, By Year, Cash basis," and it shows the total net income for that time period, breaking out gross income and expenses such as maintenance, repairs, utilities, and landscaping. Exhibit 10 is titled "Income Statement Consolidated, 1/1/2023 - 7/8/2023, By Quarter, Cash basis," and it shows total income and expenses for the first two quarters of 2023. Taylor provided them all to Klein for purposes of operating the rental properties managed by ARESG.

Nevertheless, during the bench trial, the trial court opined that the Buildium records were not "statements," and therefore, they could not be considered

---

[5] In this sense, Klein was competent to testify as to his understanding of the Exhibits and as to Taylor's representation regarding what the Exhibits purported to show. Cf. *Matthews v. Wells Fargo Bank, N.A.*, 335 Ga. App. 526, 527 (782 SE2d 312) (2016) (in the context of business records, an authenticating "witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation").

admissions: "I don't find that the defendant was ... making any ... written assertion. So I don't think that's a statement that can be used against the defendant." But hearsay, by definition, is "a statement" by a "declarant." OCGA § 24-8-801(a), (b), (c). See also OCGA § 24-8-801(a) ("Statement" means: (1) an oral or written assertion[.]"). Thus, if the Exhibits are hearsay, then they are statements, and as such, they are susceptible to evaluation as admissions under OCGA § 24-8-801(d)(2); conversely, if they are not statements, they are not hearsay. Compare *Bryan v. State*, 371 Ga. App. 769, 778(3)(a) (903 SE2d 160) (2024) ("[R]eports generated by a computer program [with no human input] are not considered [inadmissible] hearsay as they are not the statements of a person.") (citing *Inglett v. State*, 239 Ga. App. 524, 526(4) (521 SE2d 241) (1999) ("computer-generated data ... do not constitute out-of-court statements by any person" under the former Evidence Code); *United States v. Lamons*, 532 F3d 1251, 1263(II)(A) n.23 (11th Cir. 2008) ("certain statements involve so little intervention by humans in their generation as to leave no doubt that they are wholly machine-generated for all practical purposes").

Moreover, OCGA § 24-8-801(d)(2)(A) and (B) establish that if a statement is "the party's own statement," or one "which the party has manifested an adoption or

belief in its truth," it is an admission which "shall not be excluded by the hearsay rule." As noted above, it is undisputed that the Exhibits state that they were "prepared by" Taylor, the principal of ARESG, based on data he input for the purpose of providing monthly accounting to Klein, the principal of the Plaintiffs. The Exhibits are detailed and precise factual assertions regarding the monthly income and expenses provided with the expectation that Klein could rely on them.[6] This fits squarely in the definition of an admission: they were ARESG's assertions made available for Klein's reliance, thereby adopting their truth. See generally *Ghingold v. Ghingold*, 228 Ga. 515, 516 (186 SE2d 747) (1972) (husband's own financial statements were admissible against the husband).

> The justification for admitting party admissions is not that they are particularly trustworthy but that a party cannot complain when his own out-of-court statements are used against him in-court. ... [Their] admissibility is justified on the grounds that while a party needs protection from the second-hand knowledge and unqualified opinions of others, he deserves no such protection from his own statements.

---

[6] For example, Exhibit 9, titled "Income Statement Consolidated," states that for a certain period in 2023, total rent income was $55,392, total expenses were $20,520.29, and net income was $34,871.71.

Paul S. Milich, Georgia Rules of Evidence § 18:3 at 697 (2023-2024 ed.). Accordingly, the trial court erred by holding that they were inadmissible hearsay. Likewise, to the extent that the trial court held that Klein could not testify as to the contents of Buildium reports provided to him, it erred.

3. The Plaintiffs also challenge a ruling that evidence of ARESG's discovery misconduct was not relevant to the Plaintiffs' recovery of attorney fees under OCGA § 13-6-11. They argue that the evidence of litigation expenses incurred due to alleged discovery abuses should be considered in any OCGA § 13-6-11 award. We agree in part.

Under OCGA § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

> OCGA § 13-6-11 expressly makes its litigation expenses part of the damages to be awarded by the jury. It does not create an independent cause of action but rather merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of his damages. Therefore, authorization for an award under OCGA §

13-6-11 must be found in the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself. Put another way, *the element of bad faith, stubborn litigiousness, or unnecessary trouble must relate to the acts in the transaction itself prior to the litigation, not to the motive with which a party proceeds in the litigation.*

*Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 359(3) (862 SE2d 295) (2021) (superceded by statute on other grounds pertinent to apportionment) (emphasis added).

Here, there was evidence that ARESG had abused discovery by failing to timely participate. In a pre-trial ruling on a motion in limine filed by ARESG , the trial court ruled that any evidence of alleged discovery violations would not be admissible because it was irrelevant to the Plaintiffs claim for fees under OCGA § 13-6-11. On appeal, the Plaintiffs argue that such evidence should be admissible when proving any fees and expenses recoverable under OCGA § 13-6-11.

It is true that *the availability* of a fee award under OCGA § 13-6-11 is predicated on a showing of bad faith, stubborn litigiousness, or unnecessary trouble arising from the conduct in the transaction itself prior to the litigation. See *Hatcher Mgmt. Holdings, LLC*, 312 Ga. at 359(3). Thus any discovery abuse does not bear on that

determination. But this does not speak to the *amount of* fees eventually recoverable, if authorized under OCGA § 13-6-11. Accordingly, the trial court erred to the extent it excluded evidence of fees incurred, and not already recovered,[7] during the litigation, should a proper showing be made under the applicable elements of OCGA § 13-6-11.

In light of our ruling herein, we reverse the dismissal of the case under OCGA § 9-11-41(b) and remand for further proceedings consistent with this opinion, including an opportunity for ARESG to present evidence. See OCGA § 9-11-41(b) (defendant's motion for dismissal may be made without waiving the right to offer evidence). Likewise, any availability of attorney fees under OCGA § 13-6-11 shall be revisited in light of our holding and any ensuing proceedings.

*Judgment reversed and case remanded. Davis, J., and Senior Judge C. Andrew Fuller concur.*

---

[7] The trial court did make an earlier award of certain attorney fees pertinent to a motion to compel during the course of litigation. Our holding herein does not authorize a double recovery of such fees.