**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 15, 2013**

# In the Court of Appeals of Georgia

A12A2496. OLAGBEGI et al. v. HUTTO.

ELLINGTON, Chief Judge.

The defendants/appellants, Martin Olagbegi and Nile, Inc. (collectively, "Olagbegi"), appeal from the trial court's award of damages to the plaintiff/appellee, Daniel Hutto, in this breach of contract case.[1] Olagbegi contends that the trial court abused its discretion in permitting Hutto's attorney to represent him at trial and erred in awarding Hutto $67,749.55 in consequential damages. For the following reasons, we affirm the court's judgment in part and reverse in part.

---

[1] In addition to breach of contract, Hutto's complaint asserted claims for fraud, securities fraud, and breach of labor laws. The trial court, however, granted Olagbegi judgment on the pleadings as to those claims after finding that they were barred by the applicable statutes of limitation.

1. Olagbegi contends that the trial court abused its discretion in permitting an attorney, who is admitted to practice law in South Carolina but not in Georgia, to appear pro hac vice and be the sole attorney for Hutto at trial.[2] In support of this contention, Olagbegi argues that the attorney failed to submit a complete, verified application to appear pro hac vice and timely pay a required filing fee and that, because the application was incomplete, the attorney could not represent Hutto at trial without being accompanied by an active member of the State Bar of Georgia.

The record shows that, on March 2, 2012, Hutto's attorney filed an application to appear pro hac vice in the trial court after serving Olagbegi's attorney and the State Bar of Georgia with the application. Neither Olagbegi nor his attorney objected to the attorney's application before trial. See USCR 4.4 (D) (2) (a party may file an objection to the application or seek the court's imposition of conditions to its being granted); see also Footnote 3, infra. At the beginning of the bench trial on March 7, Olagbegi's attorney made the following statement:

---

[2] Whether to permit an attorney licensed in another state to appear in a specific case in the courts of Georgia is generally a matter within the discretion for the trial court, and this Court will affirm the trial court's decision absent an abuse of such discretion. *CSX Transp. v. McCord*, 202 Ga. App. 365, 367-368 (3) (414 SE2d 508) (1991).

2

[A] pro hac vice motion . . . was filed sometime around February 29th, and the certificate of service was signed by [Hutto] and not the lawyer. As far as my certification [of service] is concerned[,] the only two people that were served at all is myself and somebody . . . from [Walton] County. The Bar is not served on my certificate of service and . . . the local attorney . . . did not submit written notice of appearance and *that is all I want to get on the record.*

(Emphasis supplied.) Without directly responding to this purported objection, the trial court judge said, "All right, [Hutto's attorney] may proceed on behalf of the plaintiff." Neither Olagbegi nor his attorney asked for the judge to expressly rule on the objection, objected to proceeding with the trial without further discussion on the issue of the opposing attorney's appearance pro hac vice, proffered a factual basis for the

objection for the record,[3] or made any further statement about the matter during the trial.

Given these circumstances, we conclude that Olagbegi failed to pose timely and specific objections to the alleged errors in the trial court and, thus, waived his right to appellate review of those issues. "[O]bjections must be specific such that the objecting party must advise the trial court as to what action it wants taken." (Citation omitted.) *Old Stone Co. I v. Hughes*, 284 Ga. 259, 261 (2) (663 SE2d 687) (2008). If the trial court does not take the requested action or otherwise resolve the issue to the objecting party's satisfaction, the party must "stand his ground and fight in order to successfully enumerate as error an alleged erroneous ruling by the trial judge." (Citation and punctuation omitted.) Id. It is axiomatic that a "litigant cannot submit

---

[3] See USCR 4.4 (D) (2) (objections to applications must state a factual basis for the objection); see also USCR 4.4 (D) (3) ("An application ordinarily should be granted unless the court or agency finds reason to believe that such admission: a. may be detrimental to the prompt, fair and efficient administration of justice, b. may be detrimental to legitimate interests of parties to the proceedings other than the client(s) the applicant proposes to represent, c. one or more of the clients the applicant proposes to represent may be at risk of receiving inadequate representation and cannot adequately appreciate that risk, d. the applicant has engaged in such frequent appearances as to constitute regular practice in this state, or e. should be denied, if that applicant had, prior to the application, filed or appeared in an action in the courts of this State without having secured approval pursuant to the Uniform Superior Court Rules.").

to a ruling, acquiesce in the ruling, and still complain of same" on appeal. (Citation and punctuation omitted.) Id. at 262 (3). Moreover, "[i]t is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver." (Punctuation and footnote omitted.) *Pep Boys – Manny, Moe & Jack v. Yahyapour*, 279 Ga. App. 674 (2) (632 SE2d 385) (2006).

As shown in the brief statement quoted above, Olagbegi failed to raise any objection before or during trial to the substance or form of the attorney's application to appear pro hac vice, nor did he ask the trial court to deny the attorney's application as a consequence. Further, although he mentioned in passing that a "local attorney" had failed to submit a notice of appearance in this case, he did not articulate why that fact was significant, object to proceeding with the trial, or ask the trial court to take any action to address this alleged problem. Accordingly, these allegations of error were waived. *Old Stone Co. I v. Hughes*, 284 Ga. at 261-262 (2); *Pep Boys – Manny, Moe & Jack v. Yahyapour*, 279 Ga. App. at 674 (2); see *Horan v. Pirkle*, 197 Ga. App. 151, 151-153 (1) (397 SE2d 734) (1990) (During a colloquy with the court, a party referred to certain testimony as "hearsay" but did not state a specific objection to the testimony, and he was silent after the court stated that the evidence was admissible as a declaration against interest. Under these circumstances, the party

5

failed to raise a specific, timely objection to the testimony and, thus, waived appellate review of the issue.).

2. Olagbegi also contends that the trial court erred in awarding Hutto consequential damages in the amount of $67,749.55. We agree.

"The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact." (Citations, punctuation and footnote omitted.) *Crowell v. Williams*, 273 Ga. App. 676 (1) (615 SE2d 797) (2005). Viewed in favor of the trial court's judgment, the record shows the following facts.

In 2002, Hutto began working for Nile, Inc. after Olagbegi, the sole officer and shareholder at that time, offered him partial ownership in the company. In 2004, Hutto and Olagbegi (acting on behalf of Nile, Inc.) entered into a contract wherein Hutto agreed to pay $1,500 for 1,500 shares of common stock and $156,500 for 15,650 shares of preferred stock. The contract stated that, concurrent with the execution of the contract, Nile, Inc. accepted a total of $158,000 from Hutto in full payment for the shares, and it stated that the company "irrevocably" agreed to issue the shares of stock purchased by Hutto under the agreement within one year. The

contract also included a specific damages provision that addressed the possibility that Nile, Inc. would fail or be unable to issue the stock to Hutto pursuant to the contract. In such situation, Hutto would become a constructive owner of Nile, Inc. in the same percentage that would have occurred if Nile, Inc. had issued the 1,500 shares of common stock to him, and he would "be entitled to an immediate rescission of his purchase price of $156,500 for the Preferred Stock and Nile shall immediately repay [Hutto] all such funds, plus accrued dividends thereon, provided by [Hutto] to Nile for said Preferred Stock." Finally, the contract included an "entire agreement" clause, to wit: "This Agreement constitutes the *entire and sole* agreement related to [the] sale and purchase of the Stock of Nile. All prior or contemporaneous promises, representations, understandings or agreements, verbal or otherwise regarding the sale and purchase of the Stock of Nile, are hereby expressly merged and superseded." (Emphasis supplied.)

After Olagbegi failed to issue the stocks and refused to return the money paid by Hutto, Hutto filed the instant breach of contract claim. At trial, Hutto testified to the above facts. In addition, he testified that he had to withdraw some funds from his 401-K retirement account in order to gather enough money to pay for the shares, and, in the process, he incurred about $67,749.55 in federal and state taxes, early

withdrawal penalties, and interest. According to Hutto, before he withdrew the funds from his retirement account, Olagbegi had promised to reimburse him for the taxes and penalties resulting from the early withdrawal. Hutto asserted that Olagbegi's failure to issue the shares as required by the contract or to refund the $158,000 he (Hutto) had paid for the shares caused him to incur the additional taxes, penalties, and interest, and he asked the trial court to order Olagbegi to reimburse him for those costs as consequential damages.

In response to Hutto's evidence regarding the breach of contract, Olagbegi's sole defense was that he never executed the contract at issue[4] or received money from Hutto to purchase stock in Nile, Inc. Following the bench trial, the court awarded Hutto a total of $225,749.55, which included $158,000 under the contract and $67,749.55 in consequential damages as "necessary expenses," pursuant to OCGA § 13-6-9.[5]

---

[4] Notably, the trial court prohibited Olagbegi from pursuing this defense because he had admitted executing the contract in his answer to Hutto's complaint.

[5] OCGA § 13-6-9 states that "[a]ny necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages."

8

On appeal, Olagbegi argues that Hutto failed to meet his burden of presenting any competent evidence to show the amount of 401-K retirement funds that he withdrew and applied toward his $158,000 obligation on the stock purchase agreement, that it was necessary for him to withdraw the retirement funds in order to comply with the contract, or that he actually incurred $67,749.55 in taxes, penalties, and interest as a result of his early withdrawal of his retirement funds. We agree.

It is axiomatic that "[i]t is the plaintiff's burden to prove its damages. Damages must be proved by evidence which furnishes the jury with sufficient data to enable them to calculate the amount with reasonable certainty. Proof of damages cannot be left to speculation, conjecture and guesswork." (Citations and punctuation omitted.) *Hurst Boiler &c. v. Firstline Corp.*, 206 Ga. App. 446, 447 (1) (426 SE2d 22) (1992). Under OCGA § 13-6-8, "[r]emote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation . . . and are independent of any collateral enterprise entered into in contemplation of the contract."[6] Further, the plain language of OCGA

---

[6] See also OCGA § 13-6-2 ("Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach.").

§ 13-6-9 provides that, in order to support a claim for consequential damages under that statute, a party must prove that he or she only incurred the expenses at issue because they were, in fact, *necessary* in order for him or her to comply with the contract. See *Price v. Burns*, 43 Ga. App. 821, 822 (160 SE 531) (1931) ("[E]vidence that the plaintiff had incurred expenses in making trips and telephone calls in preparing to improve the premises pursuant to an option to do so which the plaintiff had in the lease, did not show the necessity for such expenses, where it did not appear how and why it was necessary to the performance of the contract by the plaintiff that such trips and telephone calls be made.") (citations omitted); see also, generally, *Hopper v. M & B Builders*, 261 Ga. App. 702, 706 (3) (583 SE2d 533) (2003).

In this case, the only evidence Hutto presented to support this consequential damages award was as follows. When Hutto's counsel asked him where he had obtained the $158,000 to pay for the Nile, Inc. stock, Hutto testified that "the majority of the money came out of my 401-K savings and some of it was cash that I generated through sales of stock ownership I had in my previous company." However, Hutto offered no evidence of the total amount of retirement funds he had withdrawn or when he withdrew those funds. Later, Hutto's counsel asked him if he had incurred "federal and state tax[es]" totaling $67,749.55 as a result of his withdrawal of the

10

401-K retirement funds, and Hutto responded, "[t]hat sounds about right." But Hutto failed to present any official documentary evidence, such as bank receipts or statements or tax returns, to substantiate that amount or otherwise support his claim.[7] See *Consolidated Engineering Co. v. U. I. R. Contractors*, 136 Ga. App. 923, 924 (222 SE2d 692) (1975) ("Where checks and vouchers are accessible, they are the best evidence of the expenses sought to be recovered, and parol testimony as to the approximate expenses incurred is inadmissible.") (citations omitted).

In fact, the only document Hutto presented to support this consequential damages claim was a handwritten document, dated March 2012; the document stated "Consequential damages . . . Taxes/Nile . . . Federal $56,062.55 (includes penalties and interest) . . . State $11,687.00 (does not include penalties and interest[)] . . . Total $67,749.55[.]"[8] That document, however, failed to show that the amounts recited therein were *in any way related* to Hutto's withdrawal of the 401-K retirement funds

---

[7] Cf. *Freightliner Chattanooga v. Whitmire*, 262 Ga. App. 157, 161-162 (1) (b) (584 SE2d 724) (2003) (When a defendant's breach of contract caused a dump truck owner to lose income and its senior status with an account, compensation for lost income was recoverable as consequential damages because the dump truck owner's lost profits claim was supported by tax returns and income records.).

[8] Olagbegi objected to the document as irrelevant at trial, but the court admitted the document over his objection.

11

or to the stock purchase contract at issue. As a result, it provided no support for a finding that the amounts shown constituted consequential damages that necessarily arose from Hutto's compliance with the contract. See OCGA §§ 13-6-8; 13-6-9; *Hurst Boiler &c. v. Firstline Corp.*, 206 Ga. App. at 447 (1); *Price v. Burns*, 43 Ga. App. at 822; see also *Consolidated Engineering Co. v. U. I. R. Contractors*, 136 Ga. App. at 924 ("Where more certain and satisfactory evidence is available to a party who instead produces evidence of a weaker and inferior nature, a presumption arises against him for withholding the evidence.") (citation omitted).

Consequently, we conclude that Hutto failed to present any competent evidence to support his claim for $67,749.55 in consequential damages and, as a result, the trial court erred in awarding him that amount.[9] That portion of the trial court's award is reversed, while the remaining award of $158,000 is affirmed.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur.*

---

[9] Given this decision, Olagbegi's remaining arguments as to why we must reverse the trial court's award of consequential damages are moot.