**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 22, 2022**

# In the Court of Appeals of Georgia

A21A1487. AMERICAN INFOAGE, LLC v. ONLY SOLUTION
    SOFTWARE, LLC.

MARKLE, Judge.

Following a trial in this action arising from a commercial lease dispute, a jury

awarded the lessee, Only Solutions Software, LLC (OSS), over $700,000 in damages

on its claims against the lessor, American Infoage, LLC (AI), for breach of contract,

breach of the covenant of quiet enjoyment, and tortious eviction, and nearly $30,000

in attorney fees. AI now appeals from the trial court's denial of its motion for

judgment notwithstanding the verdict or, in the alternative, for a new trial, contending

that the trial court erred by (1) denying its motion for directed verdict on the breach

of contract claim because there was insufficient evidence of OSS's damages; (2)

denying its motion for directed verdict on OSS's claim for attorney fees; (3) admitting

prejudicial hearsay; and (4) failing to overturn the damages award because it was not supported by the evidence and amounted to a double recovery. For the following reasons, we reverse and vacate the trial court's judgment as to the awards for breach of contract damages and attorney fees, and remand for a new trial as to these issues only. We affirm the trial court's hearsay ruling.

"Following a jury verdict, we view the evidence in the light most favorable to the prevailing party." *Cajun Contractors v. Peachtree Property Sub*, 360 Ga. App. 390 (861 SE2d 222) (2021). So viewed, the record shows that, in February 2018, OSS entered into a one-year commercial lease agreement with AI to rent space at AI's data center to house 24 of OSS's bitcoin miners.[1] The following month, the parties executed a second lease to house 150 of OSS's miners at the data center for two years. Under this agreement, OSS was to pay $15,000 at signing and a monthly fee of $100 per miner stored. According to OSS's sole owner, Gilson Motta, the parties thereafter entered into a third agreement to house an additional 600 miners at a monthly rental fee of $95 per miner. However, AI never signed this third lease.

---

[1] As explained by OSS's owner at trial, a bitcoin miner is a piece of hardware that is used to process cryptocurrency transactions.

Approximately five months after the initial lease was signed, AI locked Motta and his employees out of the data center. Although AI's principal, Miller Cooper, denied that Motta had been locked out, OSS allegedly owed AI over $138,000 in back rent at the time. OSS then filed this action seeking injunctive relief to access the data center, and brought multiple claims for breach of contract, breach of the covenant of quiet enjoyment, tortious eviction, and attorney fees pursuant to OCGA § 13-6-11.[2] AI answered and asserted counterclaims for breach of contract to recover unpaid rent and for attorney fees pursuant to OCGA § 13-6-11, among others.

At trial, Motta testified that AI failed to provide adequate power and cooling in the storage areas as required by the terms of the lease, and that many of the miners were damaged due to water seepage and other defective conditions at the data center. By that time, OSS was storing over 900 miners, most of which were owned by its customers, Bitvest and Tenify. Motta also testified that 60 miners were stolen or removed from the data center, and that AI ultimately locked him and his employees out of the facility for approximately ten days, during which many of the miners became inoperable and could not otherwise be maintained. Motta further explained

---

[2] OSS also brought claims for negligent repair, fraud, tortious interference with a contract, and punitive damages. At trial, OSS abandoned its claims for tortious interference with a contract and fraud.

that OSS was responsible for repairing or replacing its customers' miners at a loss to his own company.

As to damages incurred by OSS, Motta testified that he had to hire additional employees to monitor and correct conditions at the data center at a cost of $11,603.09. He also testified that OSS spent $5,103.25 to repair damaged miners, and $59,820 to replace the 60 miners that were removed from the facility. Finally, he testified that OSS sustained lost profits in the amount of $185,472 from Bitvest, and $64,032 in lost profits from Tenify, due to the defective conditions at the facility and the inability to enter the data center for ten days. Motta estimated that OSS's total loss amounted to $1.2 million. As to the claim for attorney fees, OSS's counsel testified that his fees were fair and reasonable given his training and experience, and that he billed for the entire case in the aggregate because the individual counts alleged in the complaint were largely related to either the injunction to gain access to the property, the breach of the lease claim, or the tortious eviction claim.

After OSS rested its case, AI moved for a directed verdict as to the breach of contract claim on the ground that OSS had failed to prove its damages, and as to the

4

claim for attorney fees.[3] The trial court denied these motions, and the jury returned a verdict in favor of OSS on its claims and on AI's counterclaim. It awarded $378,630 to OSS on the breach of contract claim; $16,706.34 on the quiet enjoyment claim; $309,324 on the tortious eviction claim; and $29,336.92 for attorney fees and costs. Thereafter, the trial court entered judgment on the verdict. AI moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, which the trial court denied. AI now appeals.[4]

1. AI contends that the trial court erred by denying its motions for directed verdict on OSS's breach of contract and attorney fees claims. For the following reasons, we reverse the trial court's judgment as to the awards for breach of contract damages and attorney fees, and remand the case for retrial of these issues.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the

---

[3] AI also moved for directed verdicts on OSS's negligence claims and on any claims asserted against Cooper, individually. The trial court granted the motions, and those claims are not the subject of this appeal.

[4] OSS did not file an appellate brief. See Court of Appeals Rule 23 (b) ("Appellees are encouraged but, other than the State in a criminal case, are not required to file a brief.").

evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict, new trial and JNOV will not be disturbed.

(Citation omitted.) *Cajun Contractors*, 360 Ga. App. at 393 (1).

(a) *Breach of contract claim.*

AI first argues that the trial court erred by denying its motion for directed verdict on OSS's breach of contract claim because the evidence of damages was insufficient. Specifically, AI contends that OSS did not prove its damages with reasonable certainty by failing to show any of its expenses, such as rents paid to AI, or any receipt of payments from its customers that would offset its damages. We agree that OSS failed to prove its damages for breach of contract to the requisite degree of certainty.

To succeed on a claim for breach of contract, a plaintiff must prove both the breach and the damages resulting from the breach. See *Moore v. Lovein Funeral Home*, 358 Ga. App. 10, 12 (1) (852 SE2d 876) (2020).

The measure of damages for breach of contract is the amount which will compensate the injured person for a loss which a fulfillment of the contract would have prevented or the breach of it entailed. That is, the

6

injured person is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been if the contract had been fully performed.

(Citation and punctuation omitted.) *Caldwell v. Church*, 353 Ga. App. 141, 146 (1) (836 SE2d 594) (2019). The plaintiff bears the burden of proving its damages "by evidence which furnishes the jury with sufficient data to enable them to calculate the amount with reasonable certainty. Proof of damages cannot be left to speculation, conjecture and guesswork." (Citation and punctuation omitted.) *Olagbegi v. Hutto*, 320 Ga. App. 436, 439-440 (2) (740 SE2d 190) (2013). Pursuant to OCGA § 13-6-8, "[r]emote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." In evaluating whether the damages flowing from a breach of contract were proven with sufficient certainty, we have required proof of the typical expenses that would have been incurred by a plaintiff had the contract not been breached. See *Hosp. Auth. of Charlton County v. Bryant*, 157 Ga. App. 330, 331 (2) (277 SE2d 322) (1981).

Regarding the recoverability of lost profits, the general rule

is that the expected profits of a commercial venture are not recoverable as they are too speculative, remote, and uncertain. Nevertheless, when the type of business and history of profits make the calculation of profits reasonably ascertainable, lost profits may be recovered. Thus, generally speaking, lost profits may be recovered by a business only if the business has a proven track record of profitability. And although the amount of damages need not be calculated with exact mathematical certainty, a litigant must nonetheless establish lost profits with a reasonable degree of certainty.

(Citations and punctuation omitted.) *EZ Green Assocs. v. Ga.-Pacific Corp.,* 331 Ga. App. 183, 187-188 (2) (770 SE2d 273) (2015); see also *Owens v. Novae, LLC*, 357 Ga. App. 240, 244-245 (2) (850 SE2d 457) (2020). Moreover, to establish lost profits, the jury "must be provided with figures establishing the business's projected revenue as well as its projected expenses." (Citations and punctuation omitted.) *Legacy Academy v. JLK, Inc.*, 330 Ga. App. 397, 404 (2) (765 SE2d 472) (2014).

Although there is sufficient evidence that AI breached the lease,[5] the record is lacking any competent evidence from which the jury could calculate, with reasonable certainty, OSS's damages arising from the breach. Notably, OSS wholly failed to establish its ordinary expenses in running the business and could not account for the

[5] AI does not here contend that the evidence did not support the jury's finding that it breached the lease.

8

amount of back rent it owed AI. Motta testified that he could not remember how much OSS paid to AI for rent for the months of June, July, or August 2018. And, although Motta testified that OSS suffered consequential damages from the breach, including the nearly $60,000 replacement cost for the lost miners and the $5,000 cost to repair other miners, he could not remember how much OSS had credited its customers for these losses, nor could he state how much OSS was paid by its customers. OSS did not proffer bank statements, profit and loss statements, or any financial records from which the jury could estimate its losses. As such, the evidence of OSS's actual damages from the breach of the lease was entirely speculative. See *Olagbegi*, 320 Ga. App. at 440-441 (2) (plaintiff failed to prove with reasonable certainty consequential damages flowing from breach of stock purchase agreement); *Bryant*, 157 Ga. App. at 331 (2); OCGA § 13-6-8; compare *Caldwell*, 353 Ga. App. at 146 (1) (evidence of damages from breach of purchase contract sufficient where plaintiff testified to specific amount of payments she made pursuant to the contractual terms).

Moreover, OSS could not recover its lost profits from its prospective transactions with Tenify and Bitvest because it failed to show that it had a proven record of profitability. See *EZ Green Assocs.,* 331 Ga. App. at 188 (2) ("in Georgia,

9

it is well settled that anticipated profits are too speculative and uncertain to be recoverable unless they are based on an *actual* track record of sales.") (emphasis in original); see also *Owens*, 357 Ga. App. at 245 (2); *Nateghi v. Beauford Properties*, 337 Ga. App. 834, 839 (1) (a) (788 SE2d 909) (2016) (physical precedent only) (claimant could not recover lost profits where it could not demonstrate business had a history of profitability). Rather, Motta testified that OSS was a start-up when it entered into the initial lease with AI, only possessing 24 of its own miners at the time. Thus, because OSS was "in its incipiency, by definition a newly-begun enterprise. . . . there plainly exists no basis upon which a reasonably accurate computation of lost profits might be made." (Citation omitted.) *Market Place Shopping Center v. Basic Bus. Alternatives*, 227 Ga. App. 419, 423 (2) (489 SE2d 162) (1997). Accordingly, the evidence was insufficient to support the jury's damage award on OSS's breach of contract claim.

Pursuant to OCGA § 9-11-50 (e), when a trial court erroneously denies a motion for directed verdict, we may either direct the trial court to alter the judgment accordingly or we may remand for a new trial. "Further, the whole judgment will not be set aside because of error as to a part thereof, where it can be determined from the

record how much is erroneous."[6] (Citation and punctuation omitted.) *St. Paul Fire &*

*Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 23 (4) (566 SE2d 2) (2002). Having

determined that it is necessary to vacate the award of damages for breach of contract

in the amount of $378,630, we now remand the case for a new trial on the issue of

breach of contract damages.[7]

(b) *Attorney fees claim.*

AI also argues that the award of attorney fees was not authorized by the

evidence. We do not reach the merits of this claim because we have reversed the

award on the breach of contract claim, and therefore must also reverse the award of

---

[6] For this reason, we do not disturb the judgment as to the awards for OSS's claims for breach of the covenant of quiet enjoyment and tortious eviction.

[7] In so doing, we note that the trial court charged the jury on nominal damages arising from a breach of contract at AI's request. The jury was thus authorized to award nominal damages based on AI's breach of the lease, but we are unable to ascertain with any precision how the jury calculated its award. See OCGA § 13-6-6 ("In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action.") *Brock v. King*, 279 Ga. App. 335, 342 (3) (629 SE2d 829) (2006); *King v. Brock*, 282 Ga. 56, 57 (646 SE2d 206) (2007) ("Nominal damages come into play when an injured party establishes a breach of contract, but is unable to prove actual damages."); see also *Owens*, 357 Ga. App. at 246 (2); *Green v. Key Custom Homes*, 302 Ga. App. 800, 804 (2) (692 SE2d 56) (2010) (in breach of contract case, new trial on the issue of damages warranted where evidence did not support jury award).

11

attorney's fees. See *Davis v. Johnson*, 280 Ga. App. 318, 320 (634 SE2d 108) (2006) ("Attorney fees and expenses of litigation under OCGA § 13-6-11 are ancillary and recoverable only where other elements of damage are recoverable on the underlying claim.") (citations and punctuation omitted); see also *Bldg. Materials Wholesale v. Triad Drywall*, 287 Ga. App. 772, 777-778 (3) (653 SE2d 115) (2007). We therefore vacate the award of attorney fees in the amount of $29,336.92, and remand this case for a new trial on this issue, as well. See *Bldg. Materials Wholesale*, 287 Ga. App. at 778 (3) (remanding the case for new trial to determine damages for breach of contract and attorney fees).

2. AI next contends that the trial court erred by improperly admitting prejudicial hearsay. Specifically, AI complains about the admission, pursuant to OCGA § 24-8-801 (d) (2) (D),[8] of statements made by one of its purported employees to the effect that AI stole OSS's miners. Because this issue may be relevant to the claims on remand, we consider it and conclude that any error on the part of the trial court was harmless.

---

[8] OCGA § 24-8-801 (d) (2) (D) provides, in pertinent part: "Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [a] statement by the party's agent or employee . . . concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"

12

A trial court's decision to admit evidence as an exception to the hearsay rule will not be disturbed absent an abuse of discretion. An abuse of discretion occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law. However, to be reversible error, it is not enough that the trial court erred; the plaintiffs also must show that the error had an effect on the outcome of the proceedings. Erroneous evidentiary rulings are subject to the harmless error doctrine, meaning we may not reverse a judgment because of such an error unless refusal to take such action appears to the court inconsistent with substantial justice. When we consider whether an error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.

(Citations and punctuation omitted.) *Ross-Stubblefield v. Weakland*, 359 Ga. App. 523, 526-527 (859 SE2d 502) (2021); see also OCGA §§ 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . ."); 9-11-61 ("No error in . . . the admission . . . of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Here, AI challenges Motta's testimony that Javier Rodriquez was one of AI's employees and that Javier said AI removed 60 of OSS's miners. AI claims this testimony was inadmissible because OSS failed to establish the requisite foundation to show that Javier was AI's employee at the time he made the statement and that the statement was within the scope of his employment. The trial court initially permitted this testimony as a party admission under OCGA § 24-8-801 (d) (2) (D), but when Motta later testified that he did not know which of Cooper's interrelated companies Javier actually worked for, the trial court disallowed any further testimony in this regard.[9]

Pretermitting whether the trial court erred by initially admitting this testimony on foundational grounds, AI cannot show it was harmed by any such error. See *Ross-Stubblefield*, 359 Ga. App. at 526-527. Cooper's own testimony established that Javier was AI's employee, and that Javier was responsible for "run[ning] the facility" that housed the missing miners. Thus, this claim of error fails because AI cannot show that its substantial rights were affected by the admission of this testimony. Id.; OCGA § 9-11-61. Accordingly, we affirm the trial court's evidentiary ruling.

---

[9] Notably, after its objection was ultimately sustained, AI did not request the striking of the prior testimony nor a corrective instruction.

14

3. Finally, AI challenges the total amount of damages awarded by the jury as being beyond the range of evidence and constituting a double recovery. In light of our decision to vacate the damages awarded for OSS's breach of contract claim, we do not reach the merits of these arguments.

*Judgment affirmed in part; reversed in part; vacated in part; and case remanded with direction. Barnes, P. J., and Gobeil, J., concur.*