**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 4, 2023**

# In the Court of Appeals of Georgia

A23A0564. DELPIANO v. JPMORGAN CHASE BANK, NATIONAL ASSOCIATION.

PHIPPS, Senior Appellate Judge.

This case involving reformation of a security deed is before us for a fourth time. In 2021, the trial court entered final judgment reforming the deed and declaring that JPMorgan Chase Bank, N. A., has a superior interest in the subject property. Daniel David DelPiano, the purported property owner, appealed to this Court. JPMorgan moved to dismiss the appeal, claiming that DelPiano lacked standing because he did not own the property. We remanded the case for the trial court to resolve the standing issue, which it has now done adversely to DelPiano. He appeals again, but we agree with the trial court that he lacked standing, and we therefore affirm.

The relevant background facts are detailed in our opinion resolving the second appeal in this case, *JPMorgan Chase Bank, N. A. v. DelPiano*, 356 Ga. App. 354 (847 SE2d 369) (2020) ("*DelPiano II*"):

> [I]n 2004, DelPiano and his wife Pamela decided to buy a home in Alpharetta . . . for $3.3 million. The property was purchased in Pamela's name, and she took out a $2.64 million loan from Washington Mutual Bank ("WaMu") to finance the transaction.
>
> At the closing in March 2005, Pamela executed the necessary loan documents, including an adjustable rate note, through which she promised to repay the loan, and a security deed granting WaMu a security interest in the property. Pamela's signature on the security deed was notarized by the closing attorney. Signature lines for an "unofficial" witness, however, were inadvertently left blank during the transaction. . . . Despite the missing signature, the closing attorney recorded the security deed in the Fulton County deed records on April 1, 2005. Pamela began making monthly payments on the WaMu loan, but she stopped paying in March 2006, and the loan went into default.
>
> DelPiano and Pamela divorced in May 2008. Pursuant to the parties' divorce settlement, DelPiano assumed sole responsibility for the outstanding balance of the loan, and Pamela quitclaimed her interest in the property to DelPiano in 2010. DelPiano, however, made no payments on the loan following the divorce.

2

WaMu owned the adjustable rate promissory note and related security deed until 2008, when WaMu was acquired by the Federal Deposit Insurance Company ("FDIC"). On September 25, 2008, the FDIC sold WaMu's assets, including the note and security deed, to JPMorgan. According to JPMorgan, it discovered the missing signature on the security deed in 2011, through discussions with the bank's foreclosure counsel.

In 2015, a document assigning the FDIC's interest in the security deed to JPMorgan was recorded in the Fulton County deed records. Approximately one year later, on May 17, 2016, JPMorgan filed the instant action, seeking "to correct the inadvertent attestation omission" in the security deed and to obtain a declaration that the security deed "is valid, enforceable, and occupies a first priority security interest and lien position on the [p]roperty[.]" JPMorgan named several defendants, including DelPiano (the property owner) and the United States of America (on behalf of the Department of Justice), which had filed restitution liens on the property relating to criminal proceedings against DelPiano.

Id. at 355-356.[1] Pamela DelPiano was also named as a defendant.

---

[1] DelPiano pled guilty in federal court to "conspiring with others to defraud a commercial lender." *United States v. DelPiano*, 183 Fed. Appx. 9, 10 (1st Cir. 2006).

The trial court granted judgment on the pleadings to JPMorgan and ordered that the security deed be reformed. DelPiano appealed,[2] and we reversed, holding that Pamela's admissions by default could not bind him. *DelPiano v. JPMorgan Chase Bank, N. A.*, 345 Ga. App. 151, 154-155 (812 SE2d 506) (2018) ("*DelPiano I*"). The trial court subsequently denied JPMorgan's motions for summary judgment and granted motions for summary judgment filed by DelPiano and the United States, ruling that JPMorgan's complaint was barred by the applicable statute of limitation. JPMorgan appealed, and we again reversed the trial court. *DelPiano II*, 356 Ga. App. 354. We ruled that JPMorgan's suit was not time-barred, id. at 356-358 (1), and we vacated the trial court's denial of JPMorgan's summary judgment motions and remanded for consideration of the arguments presented in those motions, id. at 359-360 (3).

Following remittitur, JPMorgan filed a renewed motion for summary judgment. The trial court granted the motion and entered a final judgment reforming the security deed and declaring that JPMorgan has a superior interest in the subject property. DelPiano appealed. JPMorgan moved to dismiss the appeal, claiming that it had

---

[2] The United States also filed an appeal, but later withdrew it. See *United States v. JPMorgan Chase Bank, N. A.*, Case No. A17A1980 (withdrawn July 14, 2017).

recently learned that DelPiano did not own the subject property and therefore lacked standing to appeal. Because the question of DelPiano's standing involved facts not in the record and required the submission of new evidence, we remanded the case to the trial court to make appropriate findings of fact and conclusions of law on that issue. *DelPiano v. JPMorgan Chase Bank, N. A.*, Case No. A22A0373 (remanded Jan. 31, 2022) ("*DelPiano III*").

After the remittitur issued in *DelPiano III*, the trial court entered an order barring JPMorgan from foreclosing on the property during the pendency of the litigation. The parties then submitted evidence on the standing issue showing the following undisputed facts: Pamela acquired the subject property by warranty deed in 2005 and quitclaimed it to DelPiano in 2010. In 2016, JPMorgan filed this lawsuit, naming DelPiano as a defendant because he was the current owner of the property. On September 12, 2017, DelPiano quitclaimed the property to the Love Family Trust, LLC ("LFT"), a "single member Florida limited liability company" of which DelPiano was "the sole managing member." DelPiano claims that his attorney advised him to make this conveyance to protect himself from personal liability, as tenants at the subject property "were throwing pool/lake parties and [DelPiano] was concerned with someone getting drunk and either getting hurt or drowning in the pool or the

lake." However, DelPiano did not file or record the deed until more than four years later, on November 2, 2021.

Nevertheless, in a 2019 deposition in this case, DelPiano testified that he owned the property free and clear of any mortgage lien. DelPiano further testified that it was "possible" that the property may at one time have been "owned by the trust," but "[i]f it was deeded over to the trust, it would have been recorded and there would be a record of it," which contradicted the records discussed above. Regardless, DelPiano denied that he, himself, had transferred the property to a trust, and he confirmed that he was then the current owner pursuant to Pamela's 2010 quitclaim deed.

JPMorgan later advertised a nonjudicial foreclosure of the property scheduled for November 2, 2021. On October 20, 2021, the attorney who was then representing DelPiano in this action wrote to counsel for JPMorgan that the planned foreclosure was improper because it "violate[d] the supersedeas triggered by [DelPiano] having filed a notice of appeal" — i.e., *DelPiano III* — from the trial court's final order. This letter did not mention DelPiano's 2017 transfer of the property to LFT.

On November 1, 2021, the day before the scheduled sale, JPMorgan's counsel received an e-mail from an attorney representing LFT. The e-mail advised that LFT

owned the property and had filed a bankruptcy petition to stop the foreclosure. This petition was signed by DelPiano on behalf of LFT. The foreclosure did not proceed.

After receiving the property pursuant to the 2017 quitclaim deed, LFT executed two further deeds to the property. On October 28, 2021, "DANIEL DELPIANO, of THE LOVE FAMILY TRUST, LLC . . . (the "Grantor")," purported to convey the property to "THE LOVE FAMILY TRUST, [LL]C . . . (the "Grantee")." Then, on January 7, 2022, LFT executed a "Corrective Quitclaim Deed" purporting to correct the October 28, 2021 deed to show that LFT actually had conveyed 50 percent to DelPiano and 50 percent to LFT. This latest deed recited that its purpose was "to correct the state of incorporation of the grantor, and add the second grantee erroneously omitted on [the October 28, 2021 quitclaim deed]."[3]

Following briefing, the trial court held an evidentiary hearing on the standing issue at which DelPiano called an "expert in the area of title examinations" to show that DelPiano owned the property from 2010 to 2021, during the pendency of this litigation. The expert initially testified that the 2017 deed from DelPiano to LFT was "not effective" until it was recorded on November 2, 2021. According to the expert,

---

[3] The October 28, 2021 deed described "the Grantor" as a Georgia corporation, but — according to DelPiano — LFT actually is a Florida limited liability corporation.

the property was solely owned by LFT from that date until the "corrective" deed was recorded in January 2022 granting 50 percent of the property to DelPiano. On cross-examination, however, the expert conceded that "[a]s far as the parties were concerned," LFT became the owner of the property as of the date of the 2017 quitclaim deed.

After the hearing, the trial court entered an order finding that DelPiano "has lacked standing to litigate this case." The court found that DelPiano had concealed from the court and JPMorgan his 2017 conveyance of the property to LFT until the day before the scheduled foreclosure. As a result of that conveyance, the court ruled, DelPiano did not own the property between the date of the 2017 conveyance and the court's June 2021 final judgment and therefore lacked standing to litigate any issues in the case, including any defenses to JPMorgan's claim to reform the security deed. Accordingly, the court vacated its earlier order preventing foreclosure. DelPiano appeals.

1. DelPiano does not quibble with the basic tenet of standing that "[a] person may only challenge a ruling that has adversely affected his or her own rights." *Associated Credit Union v. Pinto*, 297 Ga. App. 605, 606 (677 SE2d 789) (2009). Further, he has dropped his argument that the 2017 quitclaim deed transferring the

8

property to LFT was ineffective until its recording in 2021. See generally *Lionheart Legend v. Norwest Bank Minnesota N. A.*, 253 Ga. App. 663, 667 (560 SE2d 120) (2002) ("as between the parties themselves," an unrecorded deed "is valid and binding"; to hold otherwise would "allow the parties to an unrecorded deed to profit by their failure to record the deed") (citation and punctuation omitted). Rather, DelPiano argues on appeal that despite his 2017 transfer to LFT, he continued to own the property because (a) LFT never accepted the deed and (b) the January 2022 corrective deed retroactively vested him with a half-interest in the property. Both arguments fail.

(a) DelPiano maintains that "[t]he property was never effectively conveyed to [LFT] because [LFT] never accepted it." However, DelPiano did not make this argument in the trial court and therefore has waived it. See, e.g., *OVIP v. Blockbuster Textiles*, 289 Ga. App. 276, 278 (1) (656 SE2d 907) (2008) ("[I]ssues presented for the first time on appeal furnish nothing for us to review . . . One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on below.") (citations and punctuation omitted).

Even if DelPiano had not waived the argument, it lacks merit. Under Georgia law, "[d]elivery of a deed is essential to the conveyance of title thereby," and delivery

9

"includes acceptance by the grantee." *Stallings v. Newton*, 110 Ga. 875, 880 (36 SE 227) (1900); see also *Smith v. Tibbits*, 359 Ga. App. 362, 365-366 (1) (857 SE2d 820) (2021). Thus, "[t]he acceptance of a deed of bargain and sale is essential to a complete delivery." *Stinson v. Woodland Bank*, 154 Ga. 254, 257 (114 SE 181) (1922). If a grantee "retains a deed without objection, acceptance will be inferred" because "[i]t is a presumption of law that a party accepts whatever is for its benefit; but this presumption may be rebutted." *Stallings*, 110 Ga. at 880 (citation and punctuation omitted).

The 2017 quitclaim deed recites that DelPiano "signed, sealed, and delivered" the deed to LFP, which "receive[d] the property from [DelPiano] in fee simple as the sole owner." This recitation created a presumption that the deed was duly delivered and accepted. See *Smith*, 359 Ga. App. at 366-367 (1). DelPiano argues that this presumption was rebutted because there was no evidence that LFT accepted the deed in writing, as required by Georgia procedural law governing limited liability corporations. But LFT is a Florida limited liability corporation and therefore Florida law — not Georgia law — "govern[s] its organization and internal affairs." OCGA § 14-11-701 (a). DelPiano cites no authority for the proposition that LFT's presumed

10

acceptance of the 2017 deed was improper under Florida law. He therefore has not met his burden of rebutting the presumption that LFT accepted title to the property.

(b) DelPiano next argues that "the corrective deed executed and recorded in 2022 reinstated at least a one-half interest in the property [to DelPiano] as of the date of the original deed." We disagree.

Although DelPiano implicitly contends that the corrective deed "related back" to the 2017 quitclaim deed, on its face the corrective deed purported only to correct "that certain quitclaim deed recorded at deed book 64778, page 202, Fulton County, Georgia Records" — i.e., the October 2021 deed in which LFT quitclaimed the property to itself. The corrective deed did not mention — and therefore did not "correct" or relate back to — the 2017 deed quitclaiming the property from DelPiano to LFT. And even if the corrective deed did purport to amend the 2017 deed, "[t]he effective date of a corrective deed . . . is the date of the filing of that corrective deed, as there is no date-back feature." *Green Rivers Forest v. Aetna Life Ins. Co.*, 200 B. R. 956, 959 (Bankr. M. D. Ga. 1996). Thus, the amendment would not have been effective until the corrective deed was recorded in 2022 — *after* the parties had litigated the merits of the case and the trial court had entered final judgment in favor of JPMorgan.

11

2. DelPiano next contends that, even if he lacked standing, the trial court should not have dismissed the case, but instead should have joined LFT as an indispensable party-defendant under OCGA § 9-11-19.[4] DelPiano, however, has waived this argument.

DelPiano never sought to add LFT as a defendant — either before or after final judgment — even though he has known since 2017 that LFT owned the property. It was not until April 2022, after the latest remand, that DelPiano argued for the first time, in a response brief, that "the proper remedy would have been to allege that [LFT] was the real party in interest, and give Del[P]iano an opportunity to . . . substitute the LLC for himself as the proper defendant."[5] However, DelPiano never filed a motion to substitute parties and never obtained a ruling from the trial court on this issue. Accordingly, we have nothing to review. See *In re Declaration of Judicial Emergency*, 358 Ga. App. 48, 53 (1) (853 SE2d 366) (2020) ("Without a ruling by the

---

[4] To the extent that DelPiano contends that this Court has the power to join LFT, DelPiano has filed no motion seeking such relief in this Court, and we decline to add LFT as an appellee at this late juncture, pretermitting whether we have the authority to do so.

[5] DelPiano seems to suggest that some entity other than LFT or himself should have sought substitution, but DelPiano — not JPMorgan, and certainly not the trial court — was the one who knew about the 2017 property transfer, yet concealed its existence for several years.

trial court on a particular issue, there is nothing for this Court to review upon appeal."). See also *Olagbegi v. Hutto*, 320 Ga. App. 436, 437 (1) (740 SE2d 190) (2013) ("[I]t is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver.") (citation and punctuation omitted).

3. Finally, DelPiano argues that the trial court erred by failing to "review and rule on the unadjudicated issues raised in the outstanding motions for summary judgment" and by granting "equitable relief to JPMorgan without conducting a trial to balance the equities." However, DelPiano has not met his burden of showing that the trial court erred when it determined that he lacked standing to litigate any issues in the case. In light of DelPiano's lack of standing, these issues are moot.

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*